**JOHN-RUSSELL B. PATE, ESQ., Plaintiff**

**v.**

**GOVERNMENT OF THE VIRGIN ISLANDS,**
**Department of Licensing and Consumer Affairs, Defendant**

Case No. ST-14-CV-479

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

April 17, 2015

276

J. RUSSELL B. PATE, ESQ., The Pate Law Firm, St. Thomas, USVI, *Counsel for Plaintiff.*

TAMIKA M. ARCHER, ESQ., V.I. Department of Justice, Office of the Attorney General, St. Thomas, USVI, *Counsel for Defendant*.

DUNSTON, *Judge*

## MEMORANDUM OPINION AND DECLARATORY JUDGMENT

(April 17, 2015)

Before the Court is Plaintiff John-Russell B. Pate's October 22, 2014, request for injunctive relief and a declaratory judgment; Defendant Department of Licensing and Consumer Affairs' ("DLCA" or the "Department") November 21, 2014, motion to dismiss, treated here as one for summary judgment; and Defendant's March 12, 2015, and March 23, 2015, motions to strike.

Plaintiff alleges that the fee charged to attorneys and law firms is not a tax but instead an attempt to regulate the practice of law and that the DLCA does not have the authority to regulate attorneys because this authority lies exclusively with the Supreme Court of the Virgin Islands.[1] Plaintiff moves for a preliminary injunction regarding the "unconstitutional and ultra-vires actions" of the DLCA.[2] Plaintiff alleges that an injunction is necessary to prevent his arrest and criminal fines or other sanctions by the DLCA.

Defendant seeks dismissal of Plaintiff's October 22, 2014, Complaint, arguing that the DLCA does not violate the separation of powers doctrine by levying a business license fee against attorneys; Plaintiff's claims are barred under the doctrine of collateral estoppel; Plaintiff fails to state a claim that Defendant's actions are ultra vires; Plaintiff fails to state a claim for selective enforcement of the licensing fee; and Plaintiff has no standing to bring a class action on behalf of similarly situated attorneys.

Plaintiff responded on January 8, 2015, that "as a result of ensuing Constitutional and statutory violations . . . this Court must deny Defendant's motion to dismiss and allow the case to move forward."[3]

---

[1] Plaintiff John-Russell B. Pate, Esq.'s October 22, 2014, Verified Complaint for Injunctive Relief and Declaratory Judgment.

[2] Plaintiff John-Russell B. Pate, Esq.'s October 22, 2014, Motion for Temporary Restraining Order, Injunctive Relief and Declaratory Judgment, p. 1.

[3] Plaintiff's January 8, 2015, Opposition to Government's Motion to Dismiss, p. 2.

Defendant replied on January 27, 2015,[4] that Plaintiff fails to establish any property interest under the Due Process Clause of the Constitution entitling him to notice and hearing for an expired business license or a business license which was never issued.[5] Since matters outside the pleadings have been presented to and not excluded by the Court, Defendant's motion to dismiss will be treated as one for summary judgment under FED. R. CIV. P. 56.

Defendant seeks to strike Defendant's March 4, 2015, Notice of Testimony of Devin Carrington, Commissioner Designee for Department of Licensing and Consumer Affairs, arguing that "Plaintiff has improperly filed a sur-reply in the guise of a notice without first obtaining leave of the Court to do so" in violation of Superior Court Rule 7.[6] Defendant also seeks to strike the Defendant's February 6, 2015, attempt to supplement Exhibit E of his Complaint with additional samples of DLCA attorney business licenses, arguing that Defendant seeks to amend his Complaint without leave of Court in violation of FED. R. CIV. P. 15.[7]

Because the Court here issues a Declaratory Judgment, Plaintiff's motion for preliminary injunction and Defendant's motion for summary judgment are denied as moot. Defendant's motions to strike are denied.

■ The Court finds that the Legislature divested the DLCA of any power the DLCA may have had to regulate Virgin Islands attorneys via 3 V.I.C. § 272(a)(14), 27 V.I.C. § 302(b) and 4 V.I.C. § 32(e); that the fee is regulatory, that any regulation by the DLCA violates the exclusive jurisdiction of the Supreme Court to regulate the practice of law in the Territory; and, that the continued attempts by a non-taxing authority to collect these fees as revenue generating exceeds the Department's authority as a regulatory agency.

---

[4] Defendant Department of Licensing and Consumer Affairs' January 20, 2015, Motion for Enlargement of Time to Reply to Plaintiff's Opposition was granted by Court Order dated January 23, 2015. Defendant's January 27, 2015, Second Motion for Enlargement was granted by Court Order dated January 29, 2015, to nunc pro tunc, January 23, 2015.

[5] Defendant's January 27, 2015, Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss, p. 2.

[6] Defendant's March 12, 2015, Motion to Strike Plaintiff's Notice of Testimony of Devin Carrington and Attached Exhibits.

[7] Defendant's March 23, 2015, Motion to Strike Plaintiff's Notice of Supplemental Exhibits to "Exhibit E" of the Plaintiff's Complaint, pp. 1-2.

██ The DLCA lacks authority to control the practice of law and is ordered herewith to cease such regulation. Likewise, the DLCA has failed to establish that the loss of the fees generated for the General Fund of the Treasury legitimizes its regulation of attorneys.

██ The Court is cognizant that a portion of the fees collected by the DLCA from attorneys is paid into the Judicial Council Imprest Account, an account which covers the necessary expenses of the District and Superior Court libraries and the Virgin Islands Bar Association's Ethics and Grievances and Legal Education and Admission to the Bar committees. The most important consideration of this Court when considering new or a non-precedential application of the law is the identification of "the best rule for the Virgin Islands . . . based on the unique characteristics and needs of [the people] of the Virgin Islands."[8] Therefore, as the public is dependent on access to the law libraries and the regulation of attorneys by the Supreme Court via the Bar Association, it would not serve the best interest of the people of the Virgin Islands to suddenly deny funding to the Imprest Account. In the interest of justice, the Court will, as a matter of comity, permit the DLCA to collect from attorneys on behalf of, and forward to, the Judicial Council Imprest Account a $200.00 fee as a temporary tax until the Legislature has enacted a proper tax imposed by an appropriate taxing authority to fund the account or the Supreme Court has chosen to increase or reallocate attorneys' fees and dues to fund the Judicial Council Imprest Account, whichever occurs first.

## RELEVANT FACTS AND PROCEDURAL HISTORY

On October 14, 2014, Plaintiff was cited by the DLCA for failure to pay an attorney licensing fee. Plaintiff's October 22, 2014, Complaint seeks a temporary restraining order, preliminary injunction and declaratory judgment against the Department to prevent what he alleges to be a threat of arrest, demand to cease practicing, and the revocation or suspension of his business license without notice or a hearing.

Plaintiff's request for a temporary restraining order was denied on jurisdictional grounds on October 24, 2014. Plaintiff's November 6, 2014, request for reconsideration was denied on December 11, 2014, because

---

[8] *Gov't of the Virgin Islands v. Connor*, 60 V.I. 597, 603 (V.I. 2014) (citations omitted).

the movant failed to properly serve Defendant with the Summons and Complaint and to establish that his risk of harm is so imminent as to justify a TRO. The DLCA has since responded via a November 21, 2014, Motion to Dismiss and November 26, 2014, Opposition, and the Court is now satisfied that the Defendant has received notice for purposes of considering the request for a preliminary injunction.[9] Defendant's motion and opposition also served to waive any objections it may have to service.[10]

Defendant incorporated its arguments in support of the motion to dismiss into its opposition to Plaintiff's motion for TRO.[11] Because Plaintiff had not had an opportunity to respond to Defendant's motion to dismiss, the motion was referenced — but not completely resolved — in the Court's December 11, 2014, Memorandum.

The December 11, 2014, Memorandum stated that the Court suspects that the DLCA may violate due process by revoking or suspending licenses and requesting cease and desist orders without a hearing. Because the Court found that the Department's authority to impose licensing fees and interfere with the practice of law appears to have been nullified by the Legislature's grant of exclusive authority to regulate attorneys to the Supreme Court of the Virgin Islands, the Court scheduled a hearing on February 26, 2015, on Plaintiff's motion for a preliminary injunction. On January 28, 2015, Plaintiff filed an Unopposed Request for Continuance of Hearing Date, and the hearing to address Plaintiff's request for a

---

[9] "The Federal Rule of Civil Procedure 65(a)(1) notice requirement [for requests for injunctive relief] mean[s] that where factual disputes are presented, the parties must be given a fair opportunity and a meaningful hearing to present their differing versions of those facts before a preliminary injunction may be granted," *United States v. Holy Land Found. For Relief & Dev.*, 445 F.3d 771, 789 (5th Cir. 2006) opinion reinstated in part on reh'g, 493 F.3d 469 (5th Cir. 2007) (quoting *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996)), but the rule "does not require service of process." *Corrigan Dispatch Co. v. Casa Guzman, S. A.*, 569 F.2d 300, 302 (5th Cir. 1978). "Rule 65 of the Federal Rules of Civil Procedure . . . only requires that a party have notice of the motion and hearing; perfecting service on a defendant is not a prerequisite to the entry of a preliminary injunction order." *Diamond Crystal Brands, Inc. v. Wallace*, 531 F. Supp. 2d 1366, 1370 (N.D. Ga.) on reconsideration, 563 F. Supp. 2d 1349 (N.D. Ga. 2008).

[10] "Under Rule 12(h) of the Federal Rules of Civil Procedure, defective service of process is waived if it is not challenged in the first defensive pleading." *Gov't of Virgin Islands v. Sun Island Car Rentals, Inc.*, 819 F.2d 430, 433 (3d Cir. V.I. 1987) (citation omitted).

[11] Defendant's November 26, 2014, Opposition to Motion for Temporary Restraining Order, Injunctive Relief and Declaratory Judgment, n. 3.

preliminary injunction was rescheduled for March 26, 2015. The parties were ordered to be prepared to address all issues raised by both the parties and the Court at the hearing.

A six and one-half (6.5) hour hearing was held on March 26, 2015, to address Plaintiff's request for a preliminary injunction and the Court's other concerns regarding the fees imposed upon attorneys by the DLCA. The parties were ordered by Order dated December 11, 2014, to be prepared to address the multitude of issues raised by this matter. Each party had the opportunity to present witnesses and arguments on: potential due process violations by the DLCA; DLCA's procedure for the furnishing and gathering of personal and professional information; DLCA's authority and jurisdiction to regulate attorneys (separation of powers) in light of 4 V.I.C. § 32(e); whether the fees collected by the DLCA from attorneys and law firms are regulatory or revenue generating in nature; whether the collection of fees by both the Virgin Islands Supreme Court and the DLCA results in double-taxation; whether the collection of fees from both law firms and attorneys is an *ultra vires* act; whether the fee charged by the DLCA is selectively enforced against on-island attorneys; and whether the fee is properly charged against *pro hac vice* attorneys.

## STANDARD OF REVIEW — PRELIMINARY INJUNCTION

Pursuant to Superior Court Rule 7, Federal Rule of Civil Procedure 65 governs the Court's consideration of temporary restraining orders ("TRO") and preliminary injunctions.[12] "Although granted without a full adjudication on the merits, a preliminary injunction has all of the force of a permanent injunction during its period of effectiveness" and "it binds defendant, defendant's representatives, and persons with actual notice of the order who are acting in concert with defendant in the same way as does a permanent injunction."[13]

---

[12] *Yusuf v. Hamed*, 59 V.I. 841, n. 2 (V.I. 2013) (*citing* SUPER. CT. R. 7 and FED. R. CIV. P. 65). A preliminary injunction is "issued before or during trial to prevent an irreparable injury from occurring before the court has a chance to decide the case," and "will be issued only after the defendant receives notice and an opportunity to be heard." PRELIMINARY INJUNCTION, BLACK'S LAW DICTIONARY (9th ed. 2009).

[13] 11A WRIGHT, A. MILLER, & M. KANE, § 2947 (*citing* FED. R. CIV. P. 65(d)).

## *Petrus* Factors

Temporary restraining orders and preliminary injunctions are issued in order "to protect [the] plaintiff from irreparable injury and to preserve the court's power to render a meaningful decision after a trial on the merits."[14] "[T]he grant or denial of a [TRO or preliminary injunction] remains a matter for the trial court's discretion,"[15] and the Court considers the following, referred to as the *Petrus* factors:

1. Whether the movant has shown a reasonable probability of success on the merits;
2. whether the movant will be irreparably injured by denial of the relief;
3. whether granting preliminary relief will result in even greater harm to the nonmoving party; and
4. whether granting the preliminary relief will be in the public interest.[16]

The Court applies a hybrid sliding-scale test when weighing the *Petrus* factors, and each element must be supported by clear and convincing evidence.[17] If the movant has shown a reasonable probability of success on the merits and irreparable harm, the remaining two (2) factors are

---

[14] 11A WRIGHT, A. MILLER, & M. KANE, § 2947 (*citing*, among other cases, *Evans v. Buchanan*, 555 F.2d 373, 387 (3d Cir. 1977)). "[T]he preliminary injunction is appropriate whenever the policy of preserving the court's power to decide the case effectively outweighs the risk of imposing an interim restraint before it has done so." 11A WRIGHT, A. MILLER, & M. KANE, § 2947.

[15] 11A WRIGHT, A. MILLER, & M. KANE, § 2947 (citing, among other cases, *Penn Galvanizing Co. v. Lukens Steel Co.*, 468 F.2d 1021 (3d Cir. 1972)).

[16] *Tip Top Construction Corp. v. Govt. of the V.I.*, 60 V.I. 724 (V.I. 2014) (citing *Yusuf*, 59 V.I. at 847 (which quoted *Petrus v. Queen Charlotte Hotel Corp.*, 56 V.I. 548, 554 (V.I. 2012))).

[17] Although the elements considered by the Court when reviewing a request for a temporary injunction are clear, *Petrus*, 56 V.I. 548, 554, the weight given to these factors is not. A " 'sequential injunction test'[ requires] the moving party to fully satisfy each of the four injunction factors," while "a 'sliding-scale test,' [generally allows] the moving party to obtain an injunction even where the probability of success on the merits is low if the court determines that the moving party's likelihood of irreparable harm is great and the nonmoving party's likelihood of irreparable harm is very low." *Yusuf*, 59 V.I. at 847 n.3 (citing *Conestoga Wood Specialities Corp. v. Sec'y of U.S. Dep't of Health & Human Serv's.*, No. 13-1144, 2013 U.S. App. LEXIS 2706, at *1-2 (3d Cir. Feb. 8, 2013)). While the Third Circuit "recently indicated that it applies a sequential injunction test, requiring the moving party to fully satisfy each of the four injunction factors," *Yusuf*, 59 V.I. at 847 n.3, the Virgin Islands Supreme Court has "explicitly refused to take a position as to the appropriate standard," *Tip Top*, 60 V.I.

considered and balanced against each of the elements.[18,19] However, the Court recognizes that there may be situations in which the balance of the equities favors injunctive relief even where it cannot be established that the movant will be more harmed than the nonmovant and/or that granting the preliminary relief will be in the public interest.

"[T]he most compelling reason in favor of entering [an injunction] is the need to prevent the judicial process from being rendered futile by defendant's action or refusal to act."[20] "Implicit in the court's discretion . . . is that the court need not grant the total relief sought by the applicant but may mold its decree to meet the exigencies of the particular case or may enter conditional preliminary relief."[21]

---

at 732 at n.3, signifying that the standard applied by the Third Circuit is not binding upon this Court. *Yusuf*, 59 V.I. at 847 n.3 (stating that "[w]e decline to address here whether a sequential test, a sliding-scale test, or another formulation is more appropriate," and acknowledging that the Third Circuit's application of the sequential test "is at odds with the holdings of other circuit courts"). The Superior Court, then, is without compulsory authority as to the appropriate standard to apply when weighing the *Petrus* factors. In *Govt. v. Connor*, the Virgin Islands Supreme Court directed that this Court, when considering a question not foreclosed by prior precedent, "must perform a three-part analysis as set forth in *Banks*." 60 V.I. 597 (V.I. 2014) (referencing *Banks v. International Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011)). This Court conducted a *Banks* analysis in *SBRMCOA, LLC v. Morehouse Real Estate Investments, LLC*, and determined that a hybrid sliding-scale test is the appropriate standard to apply. 62 V.I. 168, 178 (V.I. Super. Ct. 2015).

[18] *SBRMCOA*, 62 V.I. at 186-87.

[19] Note that this is a correction to the hybrid sliding-scale discussion found in *Pate v. Gov't of the V.I.*, 2014 V.I. LEXIS 112, *7-8 (V.I. Super. Ct. Dec. 11, 2014), which stated that the movant need only show a reasonable probability of success on the merits and then the remaining three (3) factors are considered and balanced against each other. At the time *Pate v. Gov't of the V.I.* was decided in December of 2014, this Court was still in the process of completing the *Banks* analysis necessary to clarify the hybrid sliding-scale test adopted by the Court, a process that was completed in March of 2015.

[20] 11A WRIGHT, A. MILLER, & M. KANE, § 2947 (citing, among other cases, *O Centro Espirita Beneficiente Uniao do Vegetal v. Ashcroft*, 389 F.3d 973, 978 n.1 (10th Cir. 2004), *which quoted* WRIGHT, MILLER & KANE, aff'd and remanded, 546 U.S. 418, 126 S. Ct. 1211, 163 L. Ed. 2d 1017 (2006)).

[21] 11A WRIGHT, A. MILLER, & M. KANE, § 2947 (citing, amongst other cases, *U.S. v. Franchi*, 756 F. Supp. 889, 896 (W.D. Pa. 1991) and *Tully Mott Supermarkets, Inc.*, 337 F. Supp. 834 (D.N.J. 1972)).

## STANDARD OF REVIEW —
## MOTION FOR SUMMARY JUDGMENT

Summary judgment is only appropriate when the movant establishes both "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[22] Once the moving party meets its initial burden, "the non-moving party [then] has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor."[23] All inferences are drawn in favor of the nonmoving party;[24] but, in order to survive summary judgment, the non-moving party must present evidence that amounts to "more than a scintilla, but may amount to less than a preponderance."[25] Summary judgment "cannot be entered unless the movant has established [both] its right[ ] to a judgment with such clarity as to leave no room for controversy and [that] the other party is not entitled to recover under any discernible circumstances."[26]

## STANDARD OF REVIEW —
## DECLARATORY JUDGMENT

 Pursuant to the Virgin Islands Declaratory Judgment Act, 5 V.I.C. §§ 1261-1272, the Superior Court has the "power to declare [the] rights, status, and other legal relations whether or not further relief is or could be claimed."[27] The "decision to entertain a declaratory action is within the discretion of the Court,"[28] and the matter must involve an actual and

---

[22] FED. R. CIV. P. 56(c); *Wheatley v. Magras*, Civ. No. ST-05-CV-548, 2012 V.I. LEXIS 3, *6 (V.I. Super. Ct. Jan. 11, 2012) (quoting *Lockhart v. Gov't of the V.I.*, Civ. No. 2005-127, 2009 U.S. Dist. LEXIS 67136, *9 (D.V.I. Aug. 3, 2009)).

[23] *Wheatley*, 2012 V.I. LEXIS at *6 (quoting *Crossley v. Elliot*, Civ. No. 2007-17, 2011 U.S. Dist. LEXIS 31785, *10 (D.V.I. March 25, 2011)) (in turn quoting *Ridgewood Bd. of Educ. v. N.E. exrel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999)).

[24] *Etienne v. United Corp.*, 44 V.I. 113 (Terr. Ct. 2001) (citing to *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

[25] *Modern Day Construction v. Carty*, Civ. No. ST-09-CV-608, 2013 V.I. LEXIS 36, *5 (V.I. Super. Ct. June 13, 2013) (quoting *Wheatley*, 2012 V.I. LEXIS 3 at *6).

[26] *Etienne*, 44 V.I. at 116 (quoting *Battle v. Industrious*, 26 V.I. 83, 85 (Terr. Ct. 1991)).

[27] 5 V.I.C. § 1261.

[28] *Flavo-Rich v. Quinn*, 18 V.I. 530 (D.V.I. 1981) (citation omitted).

justiciable controversy.[29] The "declaration may be either affirmative or negative in form and effect," with "the force and effect of a final judgment or decree."[30] "[A]n interlocutory order denying declaratory judgment is generally not appealable" unless the action only seeks declaratory relief.[31] The Court reviews the parameters established by FED. R. CIV. P. 54(a) and (b) to determine whether an order is interlocutory and thus subject to LRCI 7.3,[32] or final and subject to FED. R. CIV. P. 59(e) or 60(b).[33]

## DISCUSSION

### I. Overview

#### A. Department of Licensing and Consumer Affairs

The Department of Licensing and Consumer Affairs is an executive department of the Government of the Virgin Islands,[34] created in 1987 by Act 5265 to "consolidate diverse licensing, regulatory, and permitting functions of various governmental agencies into one administrative entity."[35] The Department is headed by the Commissioner of Licensing and Consumer Affairs (the "Commissioner"),[36] and the DLCA must "establish, administer, coordinate and supervise the regulation and licensing of private business and professions."[37] The DLCA has the authority to "file any necessary legal action to fulfill the purposes of this

---

[29] *Nat'l Ass'n For Stock Car Auto Racing, Inc. v. Scharle*, 184 Fed. Appx. 270, 274 (3d Cir. 2006) (citing *St. Thomas-St. John Hotel & Tourism Assoc., Inc. v. Gov't of United States Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000)) ("A declaratory judgment may issue only where the constitutional standing requirements of a justiciable controversy are satisfied").

[30] 5 V.I.C. § 1261.

[31] *Estate of George v. George*, 50 V.I. 268 (V.I. 2008) (citations omitted).

[32] *Island Tile & Marble, LLC v. Bertrand*, 57 V.I. 596, 614 (V.I. 2012) (citing *Hagley v. Hendricks*, S.Ct. Civ. No. 2007-0026, 2007 V.I. Supreme LEXIS 8, at *6 (V.I. Dec. 28, 2007).

[33] *Id.*

[34] Act No. 5265, Title VII. Department of Licensing and Consumer Affairs, Section 270(a) (Approved June 24, 1987); 3 V.I.C. § 270(a) ("There is established as an executive department in the Government of the United States Virgin Islands the Department of Licensing and Consumer Affairs").

[35] *Id.*; 3 V.I.C. § 271. Chapter 16 of Title 3 of the Virgin Islands Code, Executive, establishes the Department of Licensing and Consumer Affairs. *See* 3 V.I.C. §§ 270-276.

[36] 3 V.I.C. § 270(b).

[37] Act No. 5265, Section 271.

chapter and enforce the rules, regulations, orders and determinations of the Department."[38] Enforcement officers of the DLCA are "peace officers," and "[a] warrant of arrest shall be directed to and executed by such officers."[39] "Any violation of the provisions of [the DLCA] or of the provisions contained in the rules and regulations promulgated there under . . . shall constitute a misdemeanor punishable by fine of not more than $1,000 or by imprisonment . . . not to exceed six months, or by both at the discretion of the Court."[40]

## B. Attorney Business Licensing — DLCA

Pursuant to 27 V.I.C. § 301, "[e]very person or association wishing to engage in [the profession of a lawyer], as a condition precedent to engaging in any such . . . profession, shall apply in writing to and obtain from the Commissioner of Licensing and Consumer Affairs . . . a license to engage in or conduct such . . . profession". "[A]ll attorneys, whether or not employed by others, are subject to the license requirement and fee".[41] Attorneys must pay a license fee of $500 annually,[42] as well as provide "pertinent [personal and professional] facts" as part of DLCA's application process.[43]

## C. Attorney Licensing — Virgin Islands Supreme Court and Virgin Islands Bar Association

In the Virgin Islands, an attorney can seek regular, special, or *pro hac vice* admission in Supreme Court.[44] The Virgin Islands Supreme Court

---

[38] Act No. 5265, Section 272(b)(2).

[39] 5 V.I.C. § 3561(a).

[40] Act No. 5265, Section 272(h) (emphasis added).

[41] *Smith v. Magras*, 124 F.3d 457, 458, 37 V.I. 464 (3d Cir. V.I. 1997). Unlike the Virgin Islands Supreme Court, the Superior Court, with some exceptions, is bound to treat Third Circuit interpretation of local law as binding. *Defoe v. Phillip*, 56 V.I. 109, 118 (V.I. 2012) *aff'd*, 702 F.3d 735 (3d Cir. V.I. 2012) (citing *In re People of the V.I.*, 51 V.I. 374, 389 n.9 (V.I. 2009), *cert. denied*, No. 09-3492, slip op. at 1 (3d Cir. V.I. Nov. 5, 2009)).

[42] 27 V.I.C. §§ 301(d) and 302(a). Chapter 9 of Title 27, Professions and Occupations, addresses Licensing of Businesses and Occupations. *See* 27 V.I.C. §§ 301-307b, General Provisions.

[43] 27 V.I.C. § 301(b).

[44] *See* 4 V.I.C. § 32. The District Court of the Virgin Islands has its own admission and disciplinary standards.

has exclusive jurisdiction over attorney regulation,[45] and the Supreme Court has appointed the Virgin Islands Bar Association to assist the Supreme Court in supervising the practice of law in the Territory.[46]

"All attorneys admitted to practice law in the Supreme Court are required to be members of the Virgin Islands Bar Association so that no one may practice law in the Supreme Court of the Virgin Islands without being a member in good standing of the Virgin Islands Bar Association."[47] Attorneys are subject to fees,[48] the grievance procedures established by the Virgin Islands Bar,[49] and the Virgin Islands Rules of Professional Conduct.[50] All active members of the Bar must participate in a requisite number of hours of continuing legal education annually.[51] Even inactive attorneys are subject to regulation by the Bar Association and the payment of annual fees.[52]

## II. Administrative Remedies

Although the Superior Court has "original jurisdiction in all civil actions, regardless of the amount in controversy,"[53] plaintiffs suing government agencies may be statutorily[54] or judicially[55] required to first exhaust any available administrative remedies before seeking redress through the Court. Chapter 9 of Title 27, Licensing of Businesses and Occupations, does not require movants to exhaust administrative remedies prior to pursuing injunctive relief,[56] nor does the Chapter

---

[45] 4 V.I.C. § 32(e).

[46] V.I.S.CT.R. 205(a).

[47] Id.

[48] V.I.S.CT.R. 201(a)(4).

[49] Id.

[50] Supreme Court Promulgation Order No. 2013-001.

[51] V.I.S.CT.R. 208(b)(1).

[52] V.I.S.CT.R. 206(b)(2).

[53] V.I.C. § 76(a).

[54] *For example*: 24 V.I.C. § 346 (injunctions — labor disputes); 12 V.I.C. § 914 (Board of Land Use Appeals); 27 V.I.C. § 441 (real estate appraiser business licensing).

[55] Exhaustion of administrative remedies is a "judicially created doctrine . . . subject to judicially created exceptions." *Babcock & Wilcox Co. v. Marshall*, 610 F.2d 1128, 1138 (3d Cir. 1979) (citations omitted).

[56] However, other sections of the Virgin Islands Code do have this clear requirement. *See Virgin Islands Conservation Soc., Inc. v. Golden Resorts, LLLP*, 55 V.I. 613, 620 n.3 (V.I.

provide administrative remedies for person's harmed without a hearing, although Act 5265 states that "[a]ny person . . . adversely affected by acts . . . [of] the Department . . . *may* within the ten (10) days following his notification file a written petition for reconsideration, specifying his objections."[57]

■ Even if the Court were to insist on administrative exhaustion in matters involving the DLCA, this case presents the need for a "pragmatic exception[ ] to promote efficiency."[58] The "exceptions to the exhaustion requirement of (1) futility, (2) violation of statutory or constitutional rights, and (3) inadequate to prevent irreparable harm" "apply even in instances where a statutory scheme explicitly provides for administrative remedies".[59] Here, the Defendant has already recommended that a cease and desist order be issued against the Plaintiff, seeking to prohibit him from conducting business within the Virgin Islands. Although the citation states that the Plaintiff may avoid adverse action by paying both the fees and penalties or by presenting himself to the DLCA, these procedures fall short of the statutory and Constitutional requirements of notice and a hearing. Plaintiff presents a colorable argument for at least some additional statutory violations, and allowing the DLCA to remove business licenses for any period of time without a hearing in violation of due process certainly presents an opportunity for irreparable harm. Therefore, even if the Plaintiff were required to first exhaust his administrative remedies before seeking relief from this Court, that restriction would be excepted under these circumstances.

## III. Motions to Strike

### A. Supplements as an Attempt to Amend Complaint

Defendant seeks to strike Plaintiff's February 6, 2015, Notice of Supplemental Exhibits to "Exhibit E" of the Plaintiff's Complaint, arguing that the additional exhibits are an attempt to amend the Complaint

---

2011) ("We recognize that section 913(b)(1) [of Title 12], unlike section 913(d), does not mandate that a litigant exhaust administrative remedies prior to seeking injunctive relief").

[57] Act 5265, Section 272(f)(1) (emphasis added).

[58] *Tutein v. Insite Towers, LLC*, 572 Fed. Appx. 107, 111 (3d Cir. V.I. 2014) (quoting *LaVallee Northside Civic Ass'n v. Virgin Islands Coastal Zone Mgmt. Comm'n*, 866 F.2d 616, 620 (3d Cir. V.I. 1989)).

[59] *Tutein*, 572 Fed. Appx. at 111 (citation omitted).

without leave of Court or opposing part's written consent in violation of FED. R. CIV. P. 15.

"[Superior Court] Rule 8 governs amendments to pleadings in Superior Court proceedings,"[60] and a pleading may be amended "for any omission or defect therein."[61] Because parties ought to be "afforded an opportunity to test [their] claim[s] on the merits,"[62] the Court "should freely give leave when justice so requires."[63] However, "such amendments . . . are vested in the sound discretion of the Superior Court."[64] The factors courts consider when evaluating a motion to amend include: delay in bringing the motion, prejudice to the opposing party, and futility of the amendment.[65]

The Court should not immediately exclude a motion seeking to amend a Complaint because parties often determine new claims — or even eliminate previously raised claims — during the discovery process. Allowing for amendment when there is no prejudice to the opposing party serves both judicial economy and the interests of justice. However, the Court need not even reach these considerations here. The Court finds that Plaintiff's attempt to supplement an exhibit to his Complaint is not a request to amend his Complaint because he is not seeking add additional claims.

---

[60] *Santiago v. V.I. Housing Auth.*, 57 V.I. 256, 306 (V.I. 2012). When Rule 8 does not address a question regarding amendments, the Court looks to "doctrines developed under [FED. R. CIV. P. 15] in determining [the] issue." *Id.* at 275, n.11.

[61] *Santiago*, 57 V.I. at 275 (quoting SUPER. CT. R. 8).

[62] *Island Green, LLC v. Querrard*, 429 Fed. Appx. 90, 93 (3d Cir. 2011) (on appeal from D.V.I.) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)).

[63] *Island Green*, 429 Fed. Appx. at 92 (quoting FED. R. CIV. P. 15(a)(2) (edits removed)).

[64] *Anthony v. Independent Insurance Advisors, Inc.*, 56 V.I. 516, 534 (V.I. 2012) (citations omitted); but *see also Greene v. Virgin Islands Water & Power Auth.*, 557 Fed. Appx. 189, 193 (3d Cir. 2014) (on appeal from D.V.I.) ("It is well-settled that when an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings") (citation omitted).

[65] *Peters v. WAPA*, 58 V.I. 49, at 54 (V.I. Super. 2013) (citing *Newfound Mgmt. Corp., Gen. Partner of Newfound Ltd. P'ship v. Sewer*, 34 F. Supp. 2d 305, 317, 40 V.I. 335 (D.V.I. 1999)). *Newfound*, and other cases cited by *Peters*, analyze the doctrines developed under FED. R. CIV. P. 15. In *Peters*, this Court found FED. R. CIV. P. 15, as a necessary supplement to SUPER. CT. R. 8, to be the soundest rule for the Virgin Islands in determining whether to allow amendments to pleadings. *See Banks* discussion, at n.23; and *Santiago*, 57 V.I. 256, 275, n.11, discussed above.

The Court will allow the Plaintiff to supplement the record. The additional DLCA attorney licenses are in line with the Court's December 11, 2014, Order that the parties address whether the collection of fees from both law firms and attorneys is an *ultra vires* act and whether the fee charged by the DLCA is selectively enforced against on-island attorneys.

## B. Surreply "In the Guise of a Notice"

Defendant argues that Plaintiff's notice of filing the testimony before the Virgin Islands Legislature of Devin Carrington, Commissioner Designee for DLCA, is not an attempt to supplement the record but is instead "a sur-reply in the guise of a notice without leave of the Court to do so."[66]

Pursuant to LRCi 7.1(a), "[o]nly a motion, a response in opposition, and a reply may be served on counsel and filed with the Court; further response or reply may be made only by leave of Court obtained before filing," and the Court may sanction counsel for violation of this limitation.[67,68] Sanctions against an attorney could include, but are not

---

[66] Defendant's Motion to Strike Plaintiff's Notice of Testimony of Devin Carrington and Attached Exhibits, p. 1.

[67] Although the rule appears to *mandate* sanctioning (WILL, GOOGLE DICTIONARY (integrated into Google Search) (last accessed on July 1, 2014) ("expressing inevitable events"); WILL, merriam-webster.com (last accessed on July 1, 2014) ("used to express a command, exhortation, or injunction"); *Butcher v. Miller*, 212 W. Va. 13, 21, 569 S.E.2d 89 (2002) (" 'will' means 'will' ")), and other rules carry mandatory sanctions (for example, FED. R. CIV. P. 26(g)(3) ("If a certification violates this rule without substantial justification, the court . . . must impose an appropriate sanction")), the Third Circuit has stated that application of Rule 7.1 (a) sanctions involves "the exercise of discretion". *Greene*, 557 Fed. Appx. at 200. The Virgin Islands Supreme Court has yet to issue binding authority regarding the application of LRCi 7.1(a) by the Superior Court, and "the Superior Court is bound, absent a contrary instruction from [the Virgin Islands Supreme] Court, to continue to apply the Third Circuit's interpretation of local law". *Garcia v. Garcia*, 59 V.I. 758, 773 (V.I. 2013). Additionally, even without the Third Circuit's guidance, due process disfavors mandatory sanctions and instead requires "notice of the legal rule on which the sanctions would be based, the reasons for the sanctions, and the form of the potential sanctions." (But note that the "precise contours of the process that is due varies given the particular context"). *In re Tutu Wells Contamination Litigation*, 120 F. 3d 368, 379, 380, 37 V.I. 398 (3d Cir. 1997) (on appeal from D.V.I.) (overruled on other grounds).

[68] Throughout their motions, the parties either fail to cite to any authority for their arguments, or cite cases and statutes without reference to or discussion of actual binding authority. Pursuant to the Virgin Islands Supreme Court's holding in *Banks*, parties — and indeed, this Court — can no longer automatically and uncritically rely on non-binding authority when

limited to:[69] criminal and/or civil contempt;[70] summary contempt sanctions;[71] and the striking of pleadings.[72] Surreplies are disfavored

discussing the best common law for the Virgin Islands. *Banks*, 55 V.I. at 979; *Connor*, 60 V.I. 597. The only decisions binding upon this Court are those rendered by: the Virgin Islands Supreme Court; the Third Circuit Court of Appeals, when serving as the de facto court of last resort in the Virgin Islands, and; the Appellate Division of the District Court of the Virgin Islands. *Najawicz v. People*, 58 V.I. 315 (V.I. 2013); *Connor*, 60 V.I. 597; *Simon v. Joseph*, 59 V.I. 611 (2013). All other holdings are merely persuasive. As a result, "the Superior Court, when considering a question not foreclosed by prior precedent . . . must perform a three-part analysis as set forth in *Banks*." *Connor*, 60 V.I. at 603, referencing *Banks*, 55 V.I. 967. A *Banks* analysis involves: (1) assertion of "whether any . . . local courts have considered the issue and rendered any decisions upon which litigants may have grown to rely;" (2) determination of the "position taken by a majority of courts from other jurisdictions;" and (3) identification of "the best rule for the Virgin Islands". *Connor*, 60 V.I. at 600 (citations omitted). However, this Court "possesses, in the absence of binding precedent . . . concurrent authority with [the Virgin Islands Supreme Court] to shape Virgin Islands common law," and it need not even follow otherwise binding precedent that was predicated solely on 1 V.I.C. § 4. *Connor*, 60 V.I. at 600, 605 n.1 (citations omitted). Thus, litigants are reminded of the requirements of LRCi 11.1. By signing a motion or supporting memorandum, an attorney certifies that the applicable law in this jurisdiction has been cited, including authority for or against the position being advocated by counsel. LRCi 11.1(a). Therefore, in the absence of discussion addressing: (1) whether cited authority is binding upon this Court *or* presented as persuasive authority; and (2) why the Court should adopt this view as the "appropriate . . . rule based on the unique characteristics and needs of the Virgin Islands" and the parties, the Court may begin striking motions as fatally deficient. *Connor*, 60 V.I. at 600 and LRCi 11.1; *see also* VIRGIN ISLANDS RULES OF PROFESSIONAL CONDUCT RULE 211.3.1, Meritorious Claims and Contentions ("A lawyer shall not . . . assert or controvert an issue . . . unless there is a basis in law and fact for doing so . . . which includes a good faith argument for an extension, modification or reversal of existing law").

[69] *See* 4 V.I.C. § 243(2), Incidental Powers of Courts ("Every court shall have power to enforce order in the proceedings before it") and LRCi 83.2(d)(1) and (2) ("Misconduct of any attorney in the presence of a judge or in any manner with respect to any matter pending before the Court may be dealt with directly by the judge in charge of the matter" and "[n]othing in this rule shall limit the Court's power to punish contempt or to sanction counsel in accordance with the federal rules of procedure or the Court's inherent authority to enforce its rules and orders").

[70] *In re Rogers*, 56 V.I. 325, 334 (V.I. 2012) ("It is clear that the Superior Court has both statutory and inherent power to compel obedience to its orders by way of contempt") (citing V.I. CODE ANN. tit. 4, §§ 243(4) and 281 and *In re Kendall*, 55 V.I. 888, 897 (V.I. 2011)); *Walters v. Walters*, 56 V.I. 471, 479 (V.I. 2012) ("[A] fine, a period of incarceration, or some combination of both, represent permissible sanctions for civil contempt"); *S.T. v. People of Virgin Islands*, 51 V.I. 420, 439 (V.I. 2009) (criminal sanctions include a fine or incarceration).

[71] "There is another species of contempt, though, that may be either civil or criminal: summary contempt. The statutory authority for summary contempt is found in section 581 of title 14 of the Virgin Islands Code." *In re Rogers*, 56 V.I. at 335.

[72] *Greene*, 557 Fed. Appx. 189, 200 ("Because the . . . Affidavit [was submitted in violation of LRCi 7.1(a), it] was never properly introduced as part of the summary judgment record,

because parties are expected to fully and expeditiously address all matters raised in the original motion in their response. "[O]ur local rules require leave of court to file any supplemental pleadings,"[73] and this requirement serves the interest of judicial economy, which benefits not only the Court but all parties involved. It should be noted, though, that Rule 7.1(a) is not a complete bar to filing a surreply. But even if issues have been raised for the first time in a reply — which would warrant a surreply in response[74] — the rule is clear that the respondent must first seek leave of court before filing an additional response.

Since matters outside the pleadings have been presented to and not excluded by the Court, Defendant's motion to dismiss is being treated as one for summary judgment. Plaintiff's Opposition was filed on January 8, 2015, but Mr. Carrington's testimony regarding the regulatory nature of the DLCA was not presented to the Legislature until February 25, 2015. Plaintiff could not be expected to file an exhibit with his opposition when the exhibit did not yet exist. While Plaintiff was amiss for not seeking leave of Court to supplement the record,[75] the Court allows the testimony as both an addition to his Opposition and as a proper response to the Court's December 11, 2014, Order requiring the parties to address whether the fees collected by the DLCA from attorneys and law firms are regulatory or revenue generating in nature.

## IV. Issues Addressed in December 11, 2014, Memorandum Opinion

Because the Plaintiff did not yet have the opportunity to respond to the Defendant's motion to dismiss when the Court issued its December 11, 2014, Order and accompanying Memorandum Opinion, many of Defendant's arguments were referenced but not completely resolved — or even resolvable — at that time. However, any previously discussed

---

[and] the District Court was under no obligation to recognize or analyze it"; *see also Tierney v. Abercrombie*, 1:11-CV-000246 LEK, 2012 U.S. Dist. LEXIS 140179, *3 (D. Haw. Sept. 28, 2012) ("[T]he court has the inherent power to control its docket and the responsibility to manage its cases to further the ends of justice. That power includes, inter alia, the right [to] strike items from the docket . . . as sanctions for litigation conduct") (citations omitted).

[73] *Griffith v. Hess Oil Virgin Islands Corp.*, 5 F. Supp. 2d 336, 339 (D.V.I. 1998) (citing LRCi 7.1).

[74] This right, however, can only be conferred by the Court. LRCi 7.1(a).

[75] Defendant similarly failed to first seek leave of Court before filing its own March 2, 2015, Notice of Supplemental Authority.

arguments are included and augmented at various points throughout this Memorandum in response to Plaintiff's opposition and Defendant's reply.

## V. Class Action

Defendant argues that "Plaintiff has no standing to bring a class action" on behalf of other Virgin Islands attorneys and that Plaintiff "has not met the requirements for class action certification."[76] Although Plaintiff's case is not captioned as a "class action,"[77] Defendant fails to demonstrate why Plaintiff's proposed class action should be dismissed in whole because it includes off-island attorneys who presumably pay taxes outside of the Virgin Islands. Nor has Defendant shown in what specific way Plaintiff has failed to meet the certification requirements of Federal Rule of Civil Procedure 23.

The Court held on December 11, 2014, that the determination of whether this case constitutes a valid class action need not be addressed. Because this matter involves both real and potential constitutional and statutory violations, any holding made by the Court will affect both Plaintiff *and* all "attorneys similarly situated," regardless of how the case is captioned. The Court need not reach the question of whether it will permit maintenance of a class action, and, for simplicity, the Court's December 11, 2014, Order directed that the caption be changed to reflect only Plaintiff's name.

## VI. Collateral Estoppel

Defendant argues that Plaintiff's case is barred under the doctrine of collateral estoppel[78] because the legitimacy of DLCA attorney licensing fees has been litigated before and settled by the District Court of the Virgin Islands in *Virgin Islands Bar Association v. Government of the Virgin Islands.*[79] Plaintiff responds that his "claims are not barred under

---

[76] Defendant's November 21, 2014, Motion to Dismiss, pp. 19 and 20.

[77] LRCi 23.1.

[78] Defendant's Motion to Dismiss, pp. 12-13.

[79] 648 F. Supp. 170, 182 (D.V.I. 1986) opinion clarified, 661 F. Supp. 501 (D.V.I. 1987) aff'd in part, vacated in part sub nom. *Hollar v. Gov't of the Virgin Islands,* 857 F.2d 163 (3d Cir. V.I. 1988).

the doctrine of collateral estoppel when the law has changed significantly since prior cases."[80] Defendant replies that "Plaintiff cannot relitigate his selective enforcement claims" because the Third Circuit "affirmed the decision of the District Court which held that the fee imposed by the DLCA and the Virgin Islands Bar Association are for 'two separate purposes' ".[81]

While the holding in *Virgin Islands Bar Association* was later upheld by the Third Circuit in *Hollar v. Government of the Virgin Islands*,[82] both cases addressed the validity and rationality of a DLCA fee *increase*, not whether the regulation of the bar by the DLCA is proper. And both decisions predate the Virgin Islands Legislature's 2004 grant of exclusive authority over attorneys to the Virgin Islands Supreme Court with the amendment of 4 V.I.C. § 32(e). Therefore, the Court finds that this matter is ripe for review and has not been previously litigated in light of the amended statute.

## VII. Due Process

Defendant argues that Plaintiff "has not established an impairment of any right under the U.S. Constitution or federal law" and thus "this claim must be dismissed."[83]

■■■ "States enjoy broad power to regulate the practice of professions within their boundaries, and the interest of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been officers of the courts."[84] "The attorney does not acquire a right to practice, through the Constitution, but through the statutes."[85] However, once an attorney has "obtained license and been admitted to practice,"[86] "the requirements of procedural due process must be met before a State can exclude a person

---

[80] Plaintiff's Opposition, p. 6.

[81] Defendant's Reply, pp. 10 and 11.

[82] 857 F.2d 163.

[83] Defendant's Motion to Dismiss, p. 19.

[84] *In re Primus*, 436 U.S. 412, 422, 98 S. Ct. 1893, 56 L. Ed. 2d 417 (1978).

[85] *Maxwell v. State*, 55 Tenn. 565, 630 (1875).

[86] *Id.*

from practicing law".[87] A "state cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment."[88]

## A. Private Cause of Action

Defendant argues that Plaintiff's due process claims should be dismissed because "[t]he Fourteenth Amendment, by its terms, does not create a private cause of action" and "[a]ny claim for violation of a constitutional right must be brought through Section 1983 of the Civil Rights Act."[89]

Defendant is correct in noting that "Plaintiff's Complaint does not contain a due process count or any claims under Section 1983."[90] In fact, the due process concerns were raised *sua sponte* by this Court in its December 11, 2014, Order in response to a review of the DLCA's licensing, citation and revocation process.[91] Plaintiff brings this action both personally and as a Virgin Islands taxpayer, and the Court may address constitutional concerns regarding illegal or unauthorized Government action via both 5 V.I.C. § 80 and its inherent powers.

## B. Refusal to Issue, Revocation or Suspension of Attorney Business Licenses Without Notice and a Hearing

Plaintiff submits that the "condition precedent business licensing of attorneys is unconstitutional" because "[a] law license is a property right to which due process protections attach" and "[o]nce a law license has been conferred . . . taking away that right requires notice and an opportunity to be heard."[92]

Pursuant to 27 V.I.C. § 304(a), "[t]he Commissioner, *after* notice and hearing, may refuse to issue, or may revoke or suspend a license for any one or any combination of the following causes [listed below]".

---

[87] *Willner v. Comm, on Character & Fitness*, 373 U.S. 96, 102, 83 S. Ct. 1175, 10 L. Ed. 2d 224 (1963) (citation omitted).

[88] *Id.*

[89] Defendant's Reply, p. 15.

[90] *Id.*

[91] December 11, 2014, Order.

[92] Plaintiff's Opposition, p. 7.

Although non-payment is not an enumerated licensing violation listed under Section 304(a) — and, in fact, the "condition precedent" requirement of Section 301(a) could be read to negate any need for notice and a hearing — due process requires notification and an opportunity to be heard *before* interference with an individual's right to practice law,[93] even for non-payment of a fee. Second, as Plaintiff points out, pursuant to 27 V.I.C. § 304(j), "[a] license applicant is not a part to the tax clearance transaction between the BIR and the DLCA"[94] and thus is not afforded notice before the business license application is denied on those grounds. The Court finds that the DLCA's procedure of denying, revoking or suspending an attorney's business license without a hearing violates due process.

## C. Request for a Cease and Desist Order Without Notice and a Hearing

■ "Statutory interpretation begins with the language of the statute itself."[95] The DLCA may, *"upon previous notice and an opportunity for a fair hearing,* impose administrative fines for violations of the rules, regulations and orders approved or prescribed by the Department."[96] And *"[a]fter a hearing* and determination that an accused has violated [the licensing requirements] . . . , the Department may issue against such accused party an order to cease and desist and may prescribe the corrective terms and conditions through the evidence at its disposal".[97] The Department may apply to the Court to have any cease and desist order issued by the DLCA enforced, and noncompliance with the judicial order constitutes contempt of Court.[98]

■ The violation/citation issued to Plaintiff on October 14, 2014, states that "[t]he above violation(s) have resulted in a recommendation to

---

[93] "The Fifth and Sixth Amendments, as well as the Due Process Clause of the Fourteenth Amendment, are applicable to the Virgin Islands by virtue of section 3 of the Revised Organic Act." *Rivera-Moreno v. Gov't of Virgin Islands,* 61 V.I. 279, 315 n.11 (V.I. 2014).

[94] Plaintiff's Opposition, p. 8.

[95] *Gov't of Virgin Islands v. AT & T of Virgin Islands, Inc.,* 274 F. Supp. 2d 731, 734 (D.V.I., App. Div. 2003) (citation omitted).

[96] Act No. 5265, Section 272(b)(4) (emphasis added).

[97] Act No. 5265, Section 272(d)(1) (emphasis added).

[98] Act No. 5265, Section 272(d)(3) and (4).

the [DLCA] that a 'CEASE AND DESIST' order be issued to prohibit [Plaintiff] from conducting business in violation of V.I. Licensing laws." Defendant's contention that Plaintiff "fails to establish any property interest . . . in an expired business license"[99] is unpersuasive because the threat of a cease and desist order against the Plaintiff stemmed from a citation to renew his business license, a "condition precedent" requirement under Title 27 to the practice of a profession within the Virgin Islands. And a party retains a property interest in an expired license until the license is actually revoked.[100] The request for a cease and desist order without notice and a hearing violates procedural due process.

### D. Due Process Violations By the Bureau of Internal Revenue

Plaintiff also challenges the Bureau of Internal Revenue's ("BIR") alleged ability to "unilaterally, without notice or the right to a hearing, prevent Plaintiff from engaging in the practice of law."[101] The BIR is not a party to this action, and the Court will not address any alleged constitutional violations against it here. However, the Court finds that the denial of a business license predicated solely on information obtained from the BIR or other sources without notice may violate due process.

### VIII. Approval of Business License on Payment of a Tax and Other Conditions

Defendant argues that "the power to tax includes the power to enforce the tax and to place reasonable regulations on persons of whom the tax

---

[99] Defendant's Reply, p. 2; argument of Defendant's council at the March 26, 2015, hearing.

[100] *Barbera v. Bureau of Prof'l*, 2013 Pa. Commw. Unpub. LEXIS 92, *14 (Pa. Commw. Ct. 2013). But *see Testwell, Inc. v. New York City Dept. of Bldgs.*, 80 A.D.3d 266, 274 (N.Y. App. Div. 1st Dep't 2010) ("Because the issuance of a license is an exercise of discretion, there is no property interest in the renewal of an expired license and no constitutional due process right to a hearing"). "Once licenses are issued their continued possession may become essential in the pursuit of a livelihood. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment." *Testwell*, 80 A.D.3d 266, 273-274 (citations omitted). While jurisdictions are split as to whether the U.S. Constitution grants a licensee a property interest in an expired license, the Court need not definitely resolve that issue here because the right to a hearing before request of a cease-and-desist order violates Act No. 5265. Therefore, the Virgin Islands grants a right to procedural due process to business licensees.

[101] Plaintiff's Opposition, p. 8.

will be collected."[102] Plaintiff alleges that he is required, at the request of the DLCA, to submit certificates of good standing and tax compliance, partnership/corporation registration, a police background check, and proper licenses from DPNR and Fire Services.[103] Defendant acknowledges that "there is no provision in the statute that requires [submission of a Certificate of Good Standing from the V.I. Supreme Court]."[104]

Under 27 V.I.C. § 301(b), an applicant must "furnish information concerning his identity, personal history, experience, business record, purposes, record of any conviction of any offense which is a felony or crime involving moral turpitude in the jurisdiction where the offense occurred, and any other pertinent facts that the Commissioner may reasonably require." But pursuant to 27 V.I.C. § 303(a), the *Commissioner*, not the applicant, is required to "submit copies of the application to the U.S. Virgin Islands Police Department (V.I.P.D.) for verification of the police record stated on the application, to the Virgin Islands Historic Preservation Commission, Department of Planning and Natural Resources for construction and site acceptability, . . . and to pay any other pertinent agency or instrumentality of the Government of the United States Virgin Islands or of the United States for the purpose of obtaining reasonable information or approval determined necessary by the Commissioner for action upon the application."[105] The applicant is, however, required to produce a tax clearance letter upon application or request for renewal under the provisions of the Virgin Islands Stop Tax

---

[102] Plaintiff's Motion to Dismiss, p. 6.

[103] Plaintiff's Motion for TRO, p. 7; Complaint, paras. 16 and 17. While Plaintiff's Exhibit A to his complaint supports that he shared a letter of good standing with the DLCA, it does not confirm, more than circumstantially, that such a request was made.

[104] Motion to Dismiss, n. 2.

[105] Defendant's website also requests that the applicant furnish Certificates of Trade Name/ Partnership and Corporation Registration from the Lt. Governor's Office, although the Court cannot find any such requirement within Chapter 9. It appears this certificate may fall within the purview of 27 V.I.C. § 303(a) (under which the Commissioner, not the applicant, is required to "pay any other pertinent agency . . . of the Government of the United States Virgin Islands . . . for the purpose of obtaining reasonable information . . . determined necessary by the Commissioner for action upon the application").

Evasion Program.[106] The Court finds that Defendant has not established that its process for regulating an attorney's business license is reasonable or in line with the statutory requirements of Title 27.

## IX. Jurisdiction and Separation of Powers

Defendant alleges that "[i]n the Virgin Islands, the power to prescribe the qualifications and duties of officers of the court is shared under the Revised Organic Act by the legislature and judiciary,"[107] and thus "the DLCA does not violate the separation of powers doctrine by levying a business license fee on attorneys".[108] Plaintiff argues that while "the Legislature has made the affirmative choice to create [4 V.I.C. § 32(e)] while not speaking directly to what should be done with respect to the DLCA's business licensure regulatory power over attorneys . . . Plaintiff . . . ask[s] this court to decide what the state of law should be in the face of this apparently [sic] statutory contradiction and what the soundest law in the Virgin Islands is".[109] Defendant replies that the doctrine "is not violated by the regulation of attorneys by the Legislature because the Legislature shares powers to regulate under the ROA".[110]

"[T]he principle of separation of powers applies to the coordinate branches of the Virgin Islands government".[111] The principle dictates that "the three branches of government — legislative, executive, and judicial — each [have] specified duties on which neither of the other branches can encroach".[112] Therefore, "as a general rule . . . unless otherwise expressly provided or incidental to the powers conferred, the legislature cannot exercise either executive or judicial power; the executive cannot exercise

---

[106] 27 V.I.C. § 304(j). The Stop Tax Evasion Program (STEP) was enacted as part of the Deficit Reduction Act of 1985 and added Subsection (j) to Section 304 of Title 27, prohibiting the Commissioner from issuing or renewing a business license to any person who fails to present proof of filing and paying all taxes, or that the applicant has made satisfactory arrangements to do so.

[107] Defendant's Motion to Dismiss, p. 4 (*citing to* 48 U.S.C. § 1611(c) and *Smith*, 124 F.3d 457, 467, 37 V.I. 464 (3d Cir. 1997)). Both 48 U.S.C. § 1611(c) and *Smith* predate the amendment of 4 V.I.C. § 32(e).

[108] *Id.* at 3.

[109] Plaintiff's Opposition to Government's Motion to Dismiss, p. 4.

[110] Defendant's Reply, p. 7.

[111] *Smith*, 124 F.3d at 458-459.

[112] SEPARATION OF POWERS, BLACK'S LAW DICTIONARY.

either legislative or judicial power; [and] the judiciary cannot exercise either executive or legislative power."[113]

However, as the DLCA points out,[114] the division of powers between the branches of government is not always clearly delineated. The Defendant cites *Smith v. Magras* for its argument that the power to regulate the practice of law is shared by the legislature and the judiciary pursuant to the Revised Organic Act ("ROA").[115] The Third Circuit's 1997 holding in *Smith* was based on a finding that, at that time, nothing in the Virgin Islands Code vested "exclusive control over the regulation of attorneys in the judiciary."[116] In the absence of a specific designation, the Third Circuit found that the ROA envisioned a sharing of powers between the legislature and judiciary over the regulation of attorneys.[117] And, at the time *Smith* was settled, the holding was "not inconsistent with the state court cases that have invalidated similar licensing because such schemes infringe on the power of the courts to regulate attorneys . . . [,] cases [that] are grounded on the exclusive control over the regulation of attorneys the particular state had vested in its judiciary."[118] However, in 2004, the Legislature passed Act No. 6687, which amended 4 V.I.C. § 32(e) and vested exclusive regulation of the bar in the Supreme Court

---

[113] *Smith*, 124 F.3d at 465-466 (quoting *Springer v. Government of the Philippine Islands*, 277 U.S. 189, 199-202, 48 S. Ct. 480, 72 L. Ed. 845 (1928)).

[114] Defendant's Motion to Dismiss, p. 3.

[115] *Id.* at p. 4.

[116] *Smith*, 124 F.3d at 466.

[117] *Id.*

[118] *Id.* at 467. The Third Circuit went on to discuss "*Harlen v. City of Helena*, 208 Mont. 45, 676 P.2d 191 (1984), [in which] the Supreme Court of Montana invalidated a city ordinance requiring a fee of all persons or entities carrying out business in the city. Vital to the court was the fact that it had exclusive authority, pursuant to the state constitution, to promulgate rules governing attorneys." *Harlen* is still good law in the state of Montana, though it should be noted that the same Supreme Court later upheld a Safety Inspection Certificate fee which covered the inspection of premises as "a minimal and inoffensive intrusion on this Court's constitutional prerogative to regulate attorneys" because [unlike the requirements of Title 27 of the Virgin Islands Code (*see, for example*, 27 V.I.C. § 301(a), stating that a license issued by the DLCA is a condition precedent to engaging in a listed profession)] "[c]learly, under its ordinance, Great Falls could not prohibit an attorney from practicing his or her profession as a result of violating the Certificate requirement." *State v. Radford*, 2001 MT 36, ¶ 10, 304 Mont. 198, 201, 19 P.3d 809 (2001).

of the Virgin Islands.[119] The DLCA has "cognizance and control of the granting, transferring, revoking, suspending and canceling of all licenses and permits, *except* in cases with respect to which, and to the extent to which, any of said powers are conferred upon another agency or person by law,"[120] and the legislative branch divested the DLCA of any shared powers it may have had with the judiciary over the regulation of attorneys with the amendment of 4 V.I.C. § 32(e).[121]

## A. *KRADOLFER V. SMITH* IS MERELY PERSUASIVE AS TO REASONABLENESS AND COMITY CONSIDERATIONS

Defendant cites *Kradolfer v. Smith*,[122] a 1990 case from the Montana Supreme Court, in support of its contention that "legislative regulation is afforded comity when it does not materially impair the judiciary's authority over the regulation of the practice of law or is supplementary to or in aid of the judiciary's role."[123] First, the Montana Supreme Court held that it *may* honor a statutory license tax 'as a matter of comity,' " but, unlike Defendant contends, " 'it is clearly not bound to do so' ".[124] Second, the Montana Supreme Court upheld the regulation as "a reasonable amount to . . . [process and] maintain the list of attorneys entitled to practice law in the State of Montana"[125] and noted that the collected funds were deposited into the court.[126] The DLCA funds are not

---

[119] *See* 4 V.I.C. § 32(e) ("Regulation of bar. The Supreme Court has exclusive jurisdiction to regulate the admission of persons to the practice of law and the discipline of persons admitted to the practice of law").

[120] Act No. 5265, Section 272(a)(14) (emphasis added).

[121] Likewise, the Third Circuit held in 2009 that "[w]hile the [Revised Organic Act] does grant the Legislature the authority to prescribe the qualifications of judges, which the Legislature has done, there is no indication that Congress intended that authority to include the power to remove judges" and "[t]he territorial judiciary has inherent authority to regulate the conduct of its judges". *Kendall v. Russell*, 572 F.3d 126, 136, 138 (3d Cir. V.I. 2009) (citation omitted).

[122] 246 Mont. 210, 805 P.2d 1266 (1990).

[123] Motion to Dismiss, p. 4, citing to *Kradolfer*, 805 P.2d at 1269.

[124] *Kradolfer*, 805 P.2d at 1269 (quoting *State ex rel. Quelch v. Daugherty*, 172 W. Va. 422, 306 S.E.2d 233, 235 (W. Va. 1983)). The Supreme Court of Montana held that another local ordinance "infringed upon the constitutional authority of [the] Court to supervise and regulate attorneys and the practice of law." *Id.* (discussing *Harlen*, 208 Mont. 45, 676 P.2d 191).

[125] *Id.*

[126] *Id.*

reverted to the judiciary, and the DLCA does not keep an accurate register of active attorneys within our Territory. Thus, *Kradolfer* is not binding upon this Court. It is merely persuasive[127] to the Court's review of the reasonableness of any regulatory infringement, as well as any considerations of comity.

## B. *ROYALL V. VIRGINIA* IS MERELY PERSUASIVE AS TO THE PROHIBITION AGAINST AN AUTHORITY'S INTERFERENCE WITH AN ATTORNEY'S PROFESSIONAL LICENSE.

Defendant places similar reliance on *Royall v. Virginia*, an 1886 U.S. Supreme Court case, for its contention that "the requirement that payment is first received to obtain a license and the possibility of enforcement of the statute for failure to pay the tax through measures such as arrest is indicia that a tax [for revenue purposes] is being levied".[128] The U.S. Supreme Court held in *Royall* that the tax placed upon attorneys was revenue generating and not regulatory, noting that the "revenue license" was "different from and in addition to the license to [practice] law," an "occupation tax for which the license is merely a receipt and not an authority . . . because it is laid and collected as revenue and not merely as incident to the general police power of the state".[129] The court discussed that, while city authorities "could not prohibit attorneys at law, already licensed, from practicing their profession within the city limits[, t]he exercise of the vocation [of law], was, however, a civil right and privilege, to which are attached valuable immunities and pecuniary advantages, and is a fair subject of taxation by the State".[130] The monetary charge, "if reasonable and just," is then only subject to "fees or

---

[127] The only decisions binding upon this Court are those rendered by the Virgin Islands Supreme Court; the Third Circuit Court of Appeals, when serving as the de facto court of last resort in the Virgin Islands; and the Appellate Division of the District Court of the Virgin Islands. *Najawicz*, 58 V.I. 315; *Connor*, 60 V.I. 597; *Simon*, 59 V.I. 611. All other holdings, including decisions rendered by courts outside of the Virgin Islands, as well as the Restatements, law review commentaries, and pre-*Banks* common law decisions of the Virgin Islands Supreme Court, Third Circuit and Appellate Division, are merely persuasive. *Connor*, 60 V.I. 597; *Simon*, 59 V.I. 611.

[128] Defendant's Motion to Dismiss, pp. 7-8.

[129] *Royall v. Virginia*, 116 U.S. 572, 577, 579-580, 6 S. Ct. 510, 29 L. Ed. 735 (1886).

[130] *Royall*, 116 U.S. at 581, quoting and discussing as on point the Supreme Court of Appeals of Virginia's holding in *Humphreys v. Norfolk*, 66 Va. 97 (1874).

fines,"[131] not, as the DLCA avers, to prohibition from the practice of law. This Court is particularly persuaded by the U.S. Supreme Court's holding that while attorneys could be subject to a reasonable and just tax as an incident of their business license, the taxing authority oversteps its bounds by seeking to restrict, pursuant to the Supreme Court's holding in *Royall*, an attorney's Constitutional right to practice the profession of law under the attorney's professional license:

> [T]hat the statute, whose application in the particular case is sought to be restrained, is not void on its face, but is complained of only because its operation in the particular instance works a violation of a constitutional right; for the cases are numerous where the tax laws of a State, which in their general and proper application are perfectly valid, have been held to become void in particular cases, either as unconstitutional regulations of commerce, or as violations of contracts prohibited by the Constitution, or because in some other way they operate to deprive the party complaining of a right [to practice his profession as] secured to him by the Constitution of the United States.[132]

And while Defendant contends that "Plaintiff has not set forth facts drawing a nexus between any alleged regulation by DLCA and the regulation of the practice of law,"[133] Defendant citation recommends that a cease and desist order be issued against the Plaintiff, seeking to prohibit the Plaintiff from conducting business within the Virgin Islands.

### C. THE LEGISLATURE'S DIVESTMENT OF THE DLCA'S JURISDICTION OVER THE VIRGIN ISLANDS BAR IS IN LINE WITH 48 U.S.C. § 1611.

Defendant points to 48 U.S.C. § 1611(c) to support its argument that the power to regulate attorneys is shared by the legislative branch and the judiciary under the ROA.[134] Pursuant to 48 U.S.C. § 1611(c), Practice and Procedure,

> The rules governing the practice and procedure of the courts established by local law and those prescribing the qualifications and duties

---

[131] *Id.* at 579-580 (citation omitted).

[132] *Royall*, 116 U.S. at 583 (quoting *Poindexter v. Greenbow*, 114 U.S. 270, 295, 5 S. Ct. 903, 29 L. Ed. 185 (1885)).

[133] Defendant's Motion to Dismiss, p. 10.

[134] *Id.* at p. 4.

of the judges and officers thereof, oaths and bonds, and the times and places of holding court shall be governed by local law or the rules promulgated by those courts.

While both the legislative and executive branch have a degree of authority over the judicial branch pursuant to checks and balances, Defendant's contention that the Legislature has authority over the regulation of attorneys[135] does nothing to further its argument that the DLCA — as part of the executive branch — has any authority to do so. Under 48 U.S.C. § 1611(b),

> The legislature of the Virgin Islands may vest in the courts of the Virgin Islands established by local law jurisdiction over all causes in the Virgin Islands over which any court established by the Constitution and laws of the United States does not have exclusive jurisdiction. Such jurisdiction shall be subject to the concurrent jurisdiction conferred on the District Court of the Virgin Islands by section 22(a) and (c) of this Act [48 USCS § 1612(a) and (c)].

Congress granted the Legislature the power to vest the local courts with *any* jurisdiction that was not held exclusively or concurrently under federal law elsewhere. The federal courts do not have exclusive or even concurrent jurisdiction with any authority to regulate members of the Virgin Islands bar regarding local matters. The Court need not interpret the intent of the Legislature where it specifically divested the DLCA of any authority over the practice of law by vesting the Virgin Islands Supreme Court with exclusive jurisdiction over regulating Virgin Islands attorneys, pursuant to — and not in violation of — 48 U.S.C. § 1611.[136] The Court finds that the statutes granting the DLCA authority to regulate attorneys were implicitly repealed by passage of 4 V.I.C. § 32.[137]

---

[135] Defendant's Reply, p. 2.

[136] *See also People of the V.I. v. Baxter*, 49 V.I. 384, 392 (V.I. 2008) (discussing Legislative vestment of appellate jurisdiction over local causes with the Virgin Islands Supreme Court); *Defoe*, 702 F.3d at 738 (*citing* 48 U.S.C. § 1611(b)) ("The Revised Organic Act enabled the Virgin Islands legislature to create its own court system, including trial courts and an appellate court").

[137] This holding only addresses the issue of who has authority to regulate the practice of law within our Territory and does not, of course, negate "the constitutional system of checks and balances" between the three coequal branches of the Virgin Islands government, a "core principal of [the United States Constitution], [and] essential to the protection of individual

Additionally, Plaintiff appears to argue that while the Supreme Court has exclusive jurisdiction over the "admission" and "discipline" of attorneys, this power is not absolute, and that even with the enactment of 4 V.I.C. § 32(e), the Legislature retains the authority to enact legislation granting other departments of the government the authority to regulate attorneys in other ways.[138] Inherent to an attorney's admission to the bar is whether the attorney may then pursue his profession, and the Plaintiff alleges that the DLCA infringes upon this right. The Court need not reach what authority, if any, exists elsewhere within the Virgin Islands Government over attorneys if that power does not infringe on the Supreme Court's exclusive authority to regulate the practice of law. And the Court will not address the Legislature's ability to enact legislation that may in some way affect the practice of law, as that question is not presented here.

### D. Whether the Imposition of the Licensing Fee in 1967 Was Constitutional is Irrelevant to the Question of Whether the DLCA's Regulation of Attorneys Violates the Exclusive Power of the Virgin Islands Supreme Court, Local Laws and the U.S. Constitution.

Defendant argues that "[w]hen the legislature imposes a tax, there is a presumption that the tax is constitutional and the presumption is indeed 'strongest in the area of taxation.' "[139] However, the constitutionality of the 1967 imposition of the business license fee, as well as whether the non-payment of business license fees due to the government may subject one to civil and criminal consequences, is not the subject of the Court's review. Instead, the Court inquires as to whether regulation by DLCA via criminal and civil penalties infringes upon the exclusive power of the Virgin Islands Supreme Court and violates local law and the United States Constitution.

---

liberty." *Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199, 191 L. Ed. 2d 186 (2015). *See also Kendall*, 572 F.3d at 138 ("We are careful to distinguish here between purely legislative functions and special checks and balances which an organic document may entrust to the legislature. So, for example, . . . the impeachment powers that Congress wields are expressly granted by the United States Constitution and are not incidental to Congress's legislative functions").

[138] Plaintiff's Reply, p. 5.

[139] Defendant's Motion to Dismiss, p. 4 (quoting *Virgin Islands Bar Assoc.*, 648 F. Supp. at 184) (further citation omitted).

## X. Regulatory or Revenue Generating

Defendant argues that "a business license fee does not lose its character of a tax because it imposes minimal regulations on attorneys; a statute is not *per se* impermissible because it imposes minimal regulations on attorneys."[140] Plaintiff responds that "[m]uch less intrusive attorney licensing schemes have been struck down by other jurisdictions."[141] Defendant replies that "[the DLCA] must seek recourse in the judiciary if an attorney engages in the practice of law without obtaining a business license."[142] However, Defendant's contention conflicts with the clear language of 27 V.I.C. § 301, which states that "[e]very person or association wishing to engage in [the profession of a lawyer], as a condition precedent to engaging in any such . . . profession, shall apply in writing to and obtain from the Commissioner of Licensing and Consumer Affairs . . . a license to engage in or conduct such . . . profession". Under the statute, the DLCA has the authority to prohibit the practice of law without first seeking approval from the judiciary.

Whether the fee is referred to as a tax or a fee is secondary to the regulatory or revenue raising purpose behind the charge,[143] and the Court need even not settle the issue of whether the fee imposed is properly termed a "tax" or a "fee":[144] Plaintiff challenges the imposition and enforcement of the fee as a statutorily prohibited interference with the Supreme Court's exclusive authority to regulate the practice of law.[145] According to the Third Circuit, "[licensing schemes similar [this one] are not uncommon . . . . [S]ome merely generate revenue by way of fees,

---

[140] *Id.* at p. 8.

[141] Plaintiff's Opposition, p. 14.

[142] Plaintiff's Reply, p. 6.

[143] For example, jurisdictions who discuss similar business licensing fees describe it as a "tax," *Kradolfer v. Smith*, 246 Mont. 210, 805 P.2d 1266, 1267 (1990) ("license tax"), a "revenue license," (*Royall*, 116 U.S. at 577, referring to Virginia Code of 1873, Title 12, ch. xxxiv, §§ 60 and 61), an "attorney occupation fee," *Rizzo v. Mich. Dep't of Treasury (In re Rizzo)*, 741 F.3d 703, 706 (6th Cir. Mich. 2014) (*quoting* BLACK'S LAW DICTIONARY 646 (9th ed. 2009)), or a "business license fee," *Allen v. City of Hammond*, 879 N.E.2d 644, 645 (Ind. Ct. App. 2008).

[144] "The [business] license required by the corporation is merely a mode of assessing the tax; if it be reasonable and just, it matters but little by what name it is called." *Royall*, 116 U.S. at 581.

[145] Complaint.

307

[while] others include regulatory provisions that govern conduct"[146] and "for the most part, these arrangements are largely unobjectionable and are ordinarily approved by state courts."[147] But, while courts within our circuit have held that a "pure[ly] revenue-raising measure does not infringe on the power of the state courts to regulate attorneys,"[148] "[c]ourts have taken a different view of measures that include regulatory provisions placing conditions on the practice of law."[149]

The issue of regulatory or revenue generating licensing fees has come before the Third Circuit Court of Appeals, most notably in *Smith*, in which non-owner attorneys who worked at law firms challenged the imposition of licensing fees upon them. Although the District Court stated in *Mendez v. Hovensa* and *Alexis v. Hovensa* that "the Court in *Smith* found Section 301(a) to be a revenue-generating provision that does not regulate the conduct of attorneys,"[150] *Smith* did not so hold. Instead, *Smith* relied on the then Commissioner's "explicit disclaimer . . . of authority to interfere with the court's control over lawyers" when holding that any "potential [regulatory] infringement is more modest than was originally supposed."[151] The Third Circuit later clarified its holding in *Smith*, stating that it had "determin[ed] that the attorney licensing scheme posed a minimal interference on the judiciary's power to regulate attorneys."[152] *Smith* did not settle the question of whether the DLCA's attorney licensing scheme is regulatory or revenue inducing.

██ Even if *Smith* held that the licensing of attorneys in the Virgin Islands is regulatory but acceptable, the regulation of attorneys in our Territory has changed quite a bit since 1997. In 2004, the power to regulate attorneys was granted exclusively to the Virgin Islands Supreme Court. Although this Court may sanction attorneys by, but not limited to, criminal and/or civil contempt, summary contempt sanctions, and the

---

[146] *Smith*, 124 F.3d at 461.

[147] *Id.*

[148] *Id.* (citing *Sterling v. City of Philadelphia*, 378 Pa. 538, 106 A.2d 793, 796-798 (1954)).

[149] *Id.*

[150] *Mendez v. Hovensa, L.L.C.*, No. 2002-CV-0169, 2008 U.S. Dist. LEXIS 118868, *5 (D.V.I. May 16, 2008); *Alexis v. Hovensa, L.L.C.*, No. 2007-CV-0091, 2008 U.S. Dist. LEXIS 118887, *5 (D.V.I. May 16, 2008) (both citing to *Smith*). *Mendez* and *Alexis* are not binding upon this Court. *Najawicz*, 58 V.I. 315; *Connor*, 60 V.I. 597; *Simon*, 59 V.I. 611.

[151] *Smith*, 124 F.3d at 465.

[152] *Kendall*, 572 F.3d at 138.

striking of pleadings,[153] even the Superior Court lacks the authority to disbar[154] attorneys.[155] Therefore, it is likely that *Smith's* holding — that the Commissioner's promise of no interference was sufficient to address any regulatory concerns — was not based on good law and is no longer binding upon this Court regarding the propriety of allowing any degree of interference[156] with the Virgin Islands Supreme Court's exclusive authority to regulate the practice of law within our Territory, including the Supreme Court's singular authority to order that an attorney cease the practice of law. And *Smith* acknowledged that at least one jurisdiction *has* invalidated a purely revenue-raising measure that "infringed on the . . . exclusive power of the courts to regulate attorneys."[157]

Defendant states that "[i]t has already been determined in this jurisdiction that the purpose of the licensing fee imposed by DLCA on attorneys is to raise revenue,"[158] an issue addressed by the District Court in *Virgin Islands Bar Association*.[159] Although this otherwise non-binding holding was upheld by the Third Circuit in *Hollar v. Government of the Virgin Islands*,[160] neither case conclusively resolves the proper characterization of the fees. The holdings in *Virgin Islands Bar Association* and *Hollar* were based on the parties' concession that the fee

---

[153] *See* footnotes 70-73, above.

[154] DISBARMENT, BLACK'S LAW DICTIONARY (9th ed. 2009) ("The action of expelling a lawyer from the bar or from the practice of law, usu. because of some disciplinary violation").

[155] *Virgin Islands Bar ex rel. Ethics & Grievance Comm, of the Virgin Islands Bar (St. Thomas & St. John Subcomm.) v. Brusch*, 49 V.I. 409, 411-412 (V.I. 2008) (citing 4 V.I.C. 34(e) and V.I.S.CT. R. 207.4.3(b)(II)(3)).

[156] *See* 27 V.I.C. § 303(b) ("The Commissioner may establish reasonable conditions and terms in any initial or renewed license reasonably related to the business, occupation, profession, or trade, the violation or breach of which may result in the revocation or suspension of the license according to the provisions of section 304"); 27 V.I.C. § 304(a)(2) ("Where the Commissioner finds that because of the moral character or previous misconduct of the applicant or licensee, relevant to the conduct of the business or occupation for which the license is sought or has been granted, such applicant or licensee is not a suitable or fit person and the denial, revocation or suspension of the license is accordingly necessary to protect the public welfare, health, morals or safety").

[157] *Smith*, 124 F.3d at 461 (citing *Sharood v. Hatfield*, 296 Minn. 416, 210 N.W.2d 275 (1973)).

[158] Defendant's Motion to Dismiss, p. 5.

[159] 648 F. Supp. 170.

[160] 857 F.2d 163.

was revenue generating,[161] not the statutory language of Titles 3 and 27 of the Virgin Islands Code or the Legislative intent behind the creation of the Department, the Supreme Court and the laws relating to each. Thus, the issue of whether the fee is regulatory in nature has not been resolved and is a matter of first impression.

## A. Purely Revenue Generating Fees

Defendant argues that "the purpose of the licensing fee imposed by the DLCA on attorneys is to raise revenue."[162] Plaintiff responds that "[a] simple tax measure does not regulate public welfare, health, morals or safety," the tasks assigned to the DLCA by 27 V.I.C. § 304,[163] and Plaintiff points out that enforcement officers of the DLCA are peace officers by statute.[164]

### i. THE DLCA IS NOT A REVENUE GENERATING DIVISION OF THE VIRGIN ISLANDS GOVERNMENT.

■■ ■■ Defendant's assertion that Section 302 is merely revenue generating and in no way regulatory[165] appears to conflict with the stated Legislative intent behind the creation of the Department of Licensing and Consumer Affairs to "establish, administer, coordinate and supervise the regulation and licensing of private businesses and professions"[166] for the

---

[161] "[T]he [Virgin Islands Bar and the Government of the Virgin Islands] agree that the purpose of the [attorney licensing] fee increase was to raise general revenues." *Virgin Islands Bar Ass'n*, 648 F. Supp. at 185. However, the DLCA is tasked with regulating, not taxing, businesses.

[162] Defendant's Motion to Dismiss, p. 5.

[163] Plaintiff's Opposition, p. 14. This consideration if found in 27 V.I.C. § 304(a)(2). The Commissioner may also "revoke or suspend a license for any one or any combination of . . . fraud or deceit . . . perpetrated in the application[,] . . . where the licensee allows, permits or suffers on the licensed place or business any improper or wrongful behavior of a substantial characters and of public concern[, w]here the licensee violated or breached any term or condition of the license . . . [, w]here the Commissioner finds that the applicant or licensee has willfully claims an exemption from any excise tax, gross receipts tax or customs duty, knowing such claim to be false[, w]here the licensee has failed to comply with Section 303b[, Registration of Vacancies, w]here the applicant has failed to comply with the provisions of [13 V.I.C. § 533(e), written proof of business entity dissolution, and/or w]here the licensee fails to comply with 19 V.I.C., Chapter 53A[, The Virgin Islands Smoke-free Act]."

[164] *Id.*, citing 5 V.I.C. § 3561.

[165] Defendant's Motion to Dismiss, p. 5.

[166] Act No. 5265, Section 272(d).

310

benefit and protection of Virgin Islands consumers. And, enforcement officers within the DLCA are peace officers, which does not appear to support its contention that it is merely a revenue generating department.[167] Unlike the Department of Finance and the Bureau of Internal Revenue, the DLCA was not established as a revenue generating division[168] or a taxing authority.[169] This is so even if the Court were to "uphold the portion of the statute requiring payment of the fee . . . after severing any unconstitutional provisions in the statute."[170] In the same way that "[t]he Legislature did not surrender its authority to collect [revenue generating] fees to the judiciary,"[171] it appears that the Legislature also did not grant this power to the Defendant. "It is an accepted rule, when a power is expressly conferred . . . and the mode of its exercise is prescribed, that such mode is exclusive of all others."[172] Additionally, even if it is argued that the Department is self-revenue generating, the fees collected are not being used for the statutory purpose of the fees — to regulate professions, a power that the DLCA does not appear to have over attorneys.

---

[167] But note that under the same statute, the "special agent within the Criminal Investigation Division of the Bureau of Internal Revenue and enforcement officer within the Treasury Division of the Department of Finance," both of which are taxing authorities, are also granted the status of peace officers. 5 V.I.C. § 3561(a).

[168] *Donastorg v. Gov't of Virgin Islands ex rel. Departments & Agencies & its Comm'rs & Directors*, 45 V.I. 259, 274-75 (Terr. V.I. 2003) ("The Virgin Islands Bureau of Internal Revenue ('IRB') was created on August 22, 1980. In doing so the Legislature assigned many of the duties formerly held by the Department of Finance to the newly created Bureau of Internal Revenue. The intent of the Legislature was to create a 'separate, single-purpose tax collection agency [that] would improve the administration and collection of taxes in the Virgin Islands' ") (*quoting* 1980 Sess. Laws 4473 and *citing to* 33 V.I.C. § 680).

[169] 3 V.I.C. § 271 ("The Department shall provide and administer consumer services and programs pursuant to this chapter and the Consumer Protection Law of 1973, as set forth in Title 12A of this Code; shall establish, administer, coordinate and supervise the regulation and licensing of private business and professions, including automobiles for hire; and shall administer services to agencies, boards and commissions as provided in this chapter and Title 27 of this Code").

[170] Plaintiff's Reply, pp. 14-15.

[171] Defendant's Motion to Dismiss, p. 12.

[172] *Stephens v. Dodds*, 243 S.W. 710, 712 (Tex. Civ. App. 1922).

### ii. That a Portion of the Funds Collected Are Directed to the Judicial Council Imprest Account Does Not Validate the Business License.

The DLCA states that the fee collected by the DLCA "aids the judiciary by directing a portion of the licensing fee to the judiciary."[173] The Judicial Council Imprest Account "shall consist of all eligible federal funds, all donations, gifts and bequests, and other revenues designated to the Imprest Account."[174] Pursuant to 4 V.I.C. 442(b), "$200.00 [of the DLCA attorney licensing fee] shall be made payable to the Judicial Council for deposit into the Imprest Fund[ and t]he remaining $300.00 of the licensing fee shall be [paid] into the General Fund of the Treasury of the Government of the Virgin Islands".[175]

 "Payments shall be made from the Judicial Council Imprest Account only for the . . . necessary expenses of the law libraries maintained by the District and Superior Courts . . . , and for the expenses of the Virgin Islands Bar Association's Committee on Ethics and Grievances, and its Legal Education and Admission to the Bar Committee,"[176] When necessary, the Account also funds "[t]he annual expenses of the Office of Disciplinary Counsel".[177] Notably, the funds are not deposited with the authority delegated by the Legislature to regulate attorneys — the Virgin Islands Supreme Court. And the designation of the funds to the judiciary does not validate an otherwise invalid fee or attempt by the DLCA to regulate the bar. Whether the collection of allegedly revenue-generating fees by a regulatory agency violates the Legislative intent of 27 V.I.C. § 301 et seq., and 4 V.I.C. § 32, and whether this

---

[173] Defendant's Motion to Dismiss, p. 11.

[174] 4 V.I.C. § 442(a).

[175] 4 V.I.C. § 442(b). It is unclear, though, whether the DLCA attorney licensing fee is the sole source of funding for the Account. *See In the Matter of Virgin Islands Bar Association's Petition to Amend Bylaws of Virgin Islands Bar Ass'n*, 60 V.I. 269 (V.I. 2013). If so, and though not challenged here, the practice of funding the District Courts' libraries and librarians from strictly local funds, 4 V.I.C. § 442(c), does not appear to be in line with the increasing independence granted to our local courts by Congress. *See, for example*, PL 112-226 [HR 6116] (Dec. 28, 2012) (providing that "final judgments or decrees rendered by the Supreme Court of the Virgin Islands may be reviewed by the Supreme Court [of the United States] by writ of certiorari," when previously these matters were subject to review by the Third Circuit Court of Appeals).

[176] *Id.*

[177] Supreme Court Rule 203(c)(7).

collection of revenue exceeds the regulatory powers granted to it is an unsettled question of law and survives summary judgment.

### iii. SAKANASHI IS PERSUASIVE TO THE COURT'S DETERMINATION OF THE PRIMARY PURPOSE OF THE FEE.

*Territory v. Sakanashi*,[178] cited by Defendant for the contention that "[i]f the primary purpose of the statute is to raise revenue, it will be viewed as a permissible tax even if it has some components which are regulatory in nature,"[179] is persuasive to the Court's consideration of whether the fee applied by the DLCA is revenue generating or regulatory in nature. In *Sakanashi*, the Supreme Court of Hawaii stated that "[i]f revenue is the primary purpose and regulation is merely incidental[,] the imposition is a [revenue generating] tax; while if regulation is the primary purpose[,] the mere fact that incidentally a revenue is also obtained does not make the imposition a tax".[180] *Sakanashi* dealt with a peddler's contention that the requirement of a broker's license fee violated the Privileges and Immunities Clause of the Constitution, not, as Plaintiff contends, allegations of due process violations upon an attorney's right to practice his profession. Thus, the Supreme Court of Hawaii's affirmation of Plaintiff's conviction under a Hawaii statute is not on point to the Court's present considerations and does not confirm the validity of DLCA's fee upon attorneys.

### iv. Taxation By a Regulatory Agency

Plaintiff responds that "[t]he Government cannot promise it will separate out attorneys from the applicable laws and enforce the DLCA regulations only as a tax as to attorneys but as a regulatory agency to all other businesses,"[181] citing *Harlen v. Helena*, a case in which the Montana Supreme Court invalidated a city ordinance requiring a fee of all persons or entities carrying out business in the city.[182]

 The Court is persuaded by the Montana Supreme Court's holding in *Harlen v. Helena*:

---

[178] *Territory v. Sakanashi*, 36 Haw. 661 (1944).
[179] Defendant's Motion to Dismiss, p. 8.
[180] *Sakanashi*, 36 Haw. at 665.
[181] Plaintiff's Opposition, p. 15.
[182] 208 Mont. 45, 676 P.2d 191 (1984).

We recognize the City's assertions that it does not or will not attempt to regulate standards and qualifications for attorney admission and practice. Nevertheless, we know of no rule of law that allows us to consider only the City's intentions as opposed to the unambiguous language of the ordinance. Despite its original intent, the City has adopted an ordinance which conditions an attorney's access to the practice of law. As such, the ordinance intrudes upon this Court's constitutional authority.[183]

The DLCA is statutorily required to regulate, not collect revenue from, professions. Thus, it is particularly determinative of this matter that the DLCA, a regulatory agency, is taxing the profession of law.

## B. Regulatory Fees

Assuming the funds are in any way regulatory in nature, the appropriateness of the collection of funds by the DLCA, an agency not tasked with regulatory powers over attorneys under 4 V.I.C. § 32, is also unsettled. As discussed, while the Department may "coordinate with other agencies and departments of the Government of the Virgin Islands to promote and watch over the enforcement of all laws,"[184] the DLCA has "cognizance and control of . . . all licenses and permits, *except* in cases . . . [where] any of said powers are conferred upon another agency . . . by law."[185] And, it appears that money raised for regulatory purposes should be paid to the entity entrusted by the Legislature to do such regulation — the Supreme Court of the Virgin Islands.[186]

---

[183] 208 Mont. at 51.

[184] Act No. 5265, Section 272(a)(3).

[185] Act No. 5265, Section 272(a)(14) (emphasis added).

[186] 4 V.I.C. § 32(e). *See Sharood v. Hatfield*, 296 Minn. 416, 420, 210 N.W.2d 275 (1973) ("Under portions of c. 638 the action taken by the supreme court to raise funds from registration of attorneys to regulate the practice of law is now threatened by diverting money contributed by members of the legal profession from the special fund to the general revenue fund of the state without an appropriation of a like amount to the supreme court for the purpose for which the money was raised. This money is not tax money. It is held in trust by the supreme court for the purposes of which it has been contributed by attorneys"). Requiring regulatory fees be used for regulatory functions is not only in line with the Legislative intent behind 4 V.I.C. § 32, it is also in line with separation of powers principles that prevent the Virgin Islands Bar from collecting taxes. *See In re Attorney Discipline Sys.*, 19 Cal. 4th 582,

■ Defendant's argument that it has either the power to tax or regulate the profession of law is inapposite to the language of Section 302(b), which states that the DLCA has jurisdiction over "[a]ny person or association engaged in a business, occupation, profession, or trade . . . *not covered by any other provision of this Code*." (emphasis added). Attorneys are regulated directly through — and pay a fee partly as a result of — 4 V.I.C. 32(e), and therefore, clearly fall outside of the purview of 27 V.I.C. § 302.

## C. Double Taxation

■ Defendant argues that The Virgin Islands District Court held in 1986 in *Virgin Islands Bar Association v. Government of the Virgin Islands*[187] that bar dues and the DLCA licensing fees do not constitute a "double tax" upon attorneys. Double taxation involves "[t]he imposition of two taxes on the same property during the same period and for the same taxing purpose."[188] Neither the District Court nor the Third Circuit looked at the Legislative intent behind Section 302, nor did those courts have the opportunity to view that section in light of the Supreme Court's relatively recent receipt of exclusive authority over Virgin Islands attorneys. If the DLCA attorney licensing fee is a tax, as the Defendant urges, this raises potential double-taxation concerns regarding the collection of fees from the Virgin Islands Bar by both a regulatory agency and the Supreme Court of the Virgin Islands during the same period and for the same taxing purposes.[189]

---

596, 79 Cal. Rptr. 2d 836, 967 P.2d 49, 57 (1998) (discussing the distinction between bar association fees and taxes).

[187] 648 F. Supp. at 182.

[188] TAXATION, BLACK'S LAW DICTIONARY (9th ed. 2009).

[189] The Court is aware that throughout Chapter 27 the Legislature required any excess funds to be deposited in the Virgin Islands General Fund. *See* 27 V.I.C. § 18 ("[R]evenues generated from [the Virgin Islands Board of Medical Examiner's] activities, including fees, charges and reimbursed costs . . . with the exception of fines and initial application fees, shall be deposited in the General Fund"); 27 V.I.C. § 165j ("All fees collected by the Board [from physical therapists] shall be deposited in the general fund of the Virgin Islands through the Commissioner of Health"); 27 V.I.C. § 292 ("All fees paid to the Board [from persons licensed as an engineer, architect or land surveyor] shall be remitted by the Secretary of the Board to the Commissioner of Finance and shall be covered into the General Fund of the Treasury of the Virgin Islands"); 27 V.I.C. § 405 (money collected from sale of unclaimed "baggage and other valuables" of hotel guests, if the identity of such guest is known, shall be transferred

■ However, as stated above, the Court will allow a temporary fee to be imposed by the DLCA in comity in order to fund the Judicial Council Imprest Account. The Court finds that this does not result in double-taxation because the $200 of the licensing fee funds the Imprest Fund while the money raised by the Virgin Islands Supreme Court via the Bar Association does not.

## XI. Ultra Vires Act

Plaintiff argues that the DLCA's levy of an additional one hundred dollar ($100.00) fee to law firms and law offices, when it is already collecting five hundred dollar ($500.00) licensing fees from each individual attorney, is an *ultra vires* act because "[t]here is no listed fee for 'law firm' or 'law office' by statute or administrative notice."[190] Defendant counters in its motion to dismiss that the "DLCA has authority under 27 V.I.C. § 302 to impose the fee"[191] and that "Plaintiff's complaint does not support Plaintiff's allegation that the fee charged is outside of DLCA's authority."[192] Section 302(b) states that:

> Any person or association engaged in a business, occupation, profession, or trade not designated in subsection (a) of this section or not covered by any other provision of this Code shall obtain an annual license at a fee determined by the Commissioner as reasonable to defray the costs of regulation, but not to exceed $500.

---

into the Department of Finance's general funds if claim is not made within one year); 27 V.I.C. § 458 ("The following schedule of fees shall be charged and collected by the Board [for the Licensing of Barbers, Beauticians, and Manicurists] and covered into the General Fund of the Treasury of the Virgin Islands"); 27 V.I.C. § 371 ("The [DLCA] may impose a civil fine of up to $10,000 for each knowing and intentional violation of [the license requirements for scrap metal dealers and scrap metal recyclers], which fine shall be transferred into the General Fund of the Government of the Virgin Islands"); *but see also* 27 V.I.C. § 231 ("No part of [the Virgin Islands Board of Public Accountancy's] Special Fund shall revert to the General Funds of the Government of the United States Virgin Islands"). This is not conclusive regarding whether the DLCA is primarily a regulatory or revenue generating department.

[190] Complaint, p. 8.

[191] Defendant's Motion to Dismiss, p. 4.

[192] *Id.* at p. 15.

Defendant urges that Plaintiff's complaint should be dismissed because "Plaintiff has failed to state a claim that he paid a fee in excess of what is permitted under law."[193]

█ The Court need not address whether Defendant's actions are *ultra vires* because the Court holds that the DLCA lacks the authority to regulate attorneys and law firms, a power that lies exclusively with the Virgin Islands Supreme Court.

## XII. DLCA Regulation of Buildings

█ Defendant posits that "[t]he business license issued by DLCA does not give attorneys the statutory authority to practice law in the Virgin Islands, but permits them to maintain a business in the Virgin Islands"[194] and contends that "[a] license fee which only controls where an attorney may obtain his office and does not regulate who is licensed as an attorney nor places any professional requirements on individuals who practice law . . . is not unconstitutional."[195] This argument does not support the DLCA's practice of charging a fee to each attorney working within a law office, nor does it offer sustenance to DLCA's argument that it may regulate law office locations. The authority to regulate a business location already lies with the Department of Planning and Natural Resources.[196]

## XIII. Excessive Fee

Plaintiff responds that Defendant admits in its motion to dismiss that it is only permitted to collect a fee "not to exceed $500."[197] Plaintiff argues that the fee it charges law firms — $130.00 — is not in violation of Section 302(b). Section 302(b) states that "[a]ny person or association engaged in a business, occupation, profession, or trade *not designated in subsection (a) of this section or not covered by any other provision of this*

---

[193] *Id.* at p. 16. Defendant also contends that Plaintiff seeks "to enjoin actions which took place years ago" by attaching his previous business license to the Complaint. *Id.* This argument is not persuasive, as Plaintiff challenges ongoing and current actions of the DLCA.

[194] *Id.* at p. 11.

[195] *Id.* p. 11.

[196] 3 V.I.C. § 401(a)(18) ("The Department [of Planning and Natural Resources] shall administer and enforce all laws . . . relating to construction and repairs under building permits, provide a building inspection service, and administer and enforce the Building Code").

[197] Plaintiff's Opposition, p. 16, quoting 27 V.I.C. § 302.

*Code* shall obtain an annual license at a fee determined by the Commissioner as reasonable to defray the costs of regulation, but not to exceed $500," and does not support Plaintiff's contention that the fee is excessive. However, pursuant to Section 302(a), attorneys are to be charged an annual fee of $500.00, while Plaintiff presents evidence that he is charged an annual fee of $600.00.[198]

 Defendant points to Act No 6585, Section 13, which provided that "the departments and agencies of the Government of the Virgin Islands may increase any administrative fee established under provisions of the Virgin Islands Code by not more than $100 a year" and amended 27 V.I.C. § 302(b) to allow the Commissioner to charge a "reasonable" fee "to defray the cost of regulation . . . not to exceed $500,"[199] in support of its authority to charge both attorneys and law firms a fee. However, this is in opposition to the clear language of Section 302(b), which states that the DLCA may charge a fee to "[a]ny person or association engaged in a business, occupation, profession, or trade *not* designated in subsection (a)" (emphasis added). Law firms are comprised of attorneys, and attorneys are specifically designated in Section 302(a).

## XIV. Pro Hac Vice

Defendant submits that Plaintiff's "allegation that all *pro hac vice* attorneys are required to obtain a business license in the Virgin Islands is speculative and cannot survive a motion to dismiss"[200] and that, as a regularly admitted attorney, Plaintiff lacks standing to address the DLCA license as it applies to attorneys admitted *pro hac vice*. As a Virgin Islands taxpayer, Plaintiff need not allege that every harm discussed may befall him personally, only that the Government action is illegal or unauthorized. 5 V.I.C. § 80. Additionally, Defendant states that "[a] license issued by DLCA entitles the owner to 'carry on the specified business or occupation from the designated place of business,' " and, if a *pro hac vice* attorney lists a designated place of business in its application

---

[198] *See* Plaintiff's Exhibits E and F, Complaint, which demonstrate a $130 "law firm" fee and a $600.00 "attorney" fee for the years 2010 and 2012. The $600.00 fee is in additional to the $130 "law firm" fee. *See also* Exhibit F, which demonstrates a $600.00 "attorney" fee charged to three (3) additional Virgin Islands attorneys.

[199] Plaintiff's March 6, 2015, Amended Notice of Supplemental Authority, p. 1.

[200] Defendant's Motion to Dismiss, p. 14.

for a business, the DLCA may impose a business fee upon that individual.[201] Plaintiff responds that *pro hac vice* attorneys list "a physical and mailing address in the Virgin Islands on [their] form . . . because DLCA will not accept a stateside address on its forms."[202] The Court finds, then, that the Defendant's objection to Plaintiff's allegations regarding *pro hac vice* attorneys is waived because the DLCA requires all professionals seeking "to engage in any business, occupation, profession, or trade"[203] to apply for a business license, and the application for a business license requires all attorneys — regardless of status — to list a local address.

■ The Third Circuit declined to "reach the question whether [attorneys who do not ordinarily work in the Virgin Islands] are 'engaged in' being attorneys in the Virgin Islands,"[204] but has held that "engaging in a single isolated business transaction does not constitute being engaged in a business for which a license to do business must be procured."[205] In the Virgin Islands, "[n]o attorney or law firm may appear *pro hac vice* in more than a total of three [civil] causes,"[206] and this rule applies to entire firms, whether the appearances are before the local or District courts.[207] *Pro hac vice* attorneys may appear in three (3) civil cases, may practice separately before the District Court, and may be able to accept additional criminal cases. Thus while the Court finds that application of DLCA business license requirements to *pro hac vice* attorneys — or any attorneys — is not in line with the requirements and purposes of Chapter 27 of the Virgin Islands Code, it does find that *pro hac vice* attorneys are capable of multiple business transactions within our jurisdiction and are thus subject to the $200 temporary Judicial Council Imprest Account tax.

---

[201] *Id.* at p. 15.

[202] Plaintiff's Opposition, p. 15.

[203] 27 V.I.C. § 301(a).

[204] *Alexis*, 2008 U.S. Dist. LEXIS 118887, *5 (quoting *Magras*, 124 F.3d 457, n.5).

[205] *Roberts v. Ross*, 344 F.2d 747, 750, 5 V.I. 219 (3d Cir. V.I. 1965) (abrogated on other grounds recognized by *Lansford-Coaldale Joint Water Auth. v. Tonolli Corp.*, 4 F.3d 1209, 1216 (3d Cir. 1993)).

[206] *In Matter of Application of Shores*, 59 V.I. 994, 999 (V.I. 2013) (*quoting* V.I.S.Ct.R. 201). *Shores* did not settle whether the three admission rule also applies to *pro hac vice* admission in a criminal case. *Shores*, 59 V.I. 1002 at n.6.

[207] *Shores*, 59 V.I. at 998 (citing *In re Admission of Alvis*, 54 V.I. 408, 414-415 (V.I.2010)).

## XV. Character of DLCA Regulation Versus Character of Judicial Regulation of Attorneys

Defendant argues that "DLCA does not usurp the judiciary's authority because the regulation, if any, by DLCA is of a different character than the regulation conducted by the judiciary."[208] That a DLCA business license and a professional license issued by the Virgin Islands Bar are of a separate character is not at issue and needs not be discussed further. Instead, the Court must consider whether the DLCA exceeds its authority by presenting itself as a taxing authority and/or by attempting to regulate the practice of law within the Virgin Islands, as Plaintiff alleges.

### A. Legislative Intent and Licensure of Self-Regulating Professions

Related to the this discussion is the fact that the Court could not find any other traditionally self-regulating profession subject to the same licensing provisions established by the DLCA in Chapter 9 of Title 27. For example: members of the medical field are subject to the requirements of the Virgin Islands Board of Medical Examiners,[209] and licensing fees collected, with the exception of fines and initial application fees, are deposited with the Board of Medical Examiners;[210] the profession of psychology is governed by the Board of Psychology Examiners,[211] and licensing fees are paid to the psychology board of the original license;[212] and the profession of public accounting is subject to regulation by the Virgin Islands Board of Public Accountancy.[213] The fees collected from these professions go, almost exclusively, to the boards that regulate each practice. However, with the exception of *public* accountants,[214] medical

---

[208] Defendant's Motion to Dismiss, p. 9.

[209] 27 V.I.C. § 3(a).

[210] 27 V.I.C. § 18(a).

[211] 27 V.I.C. § 169a(a).

[212] 27 V.I.C. § 169g(a).

[213] 27 V.I.C. § 231.

[214] 27 V.I.C. § 302 ("Public Accountant [$]120"). The same licensing fee requirements do not appear to apply to accountants who do not offer their services to the general public. *See* 27 V.I.C. § 230(3) ("The phrase 'in the practice of public accounting' when used in sections 230-247 of this title shall be interpreted to refer to all persons who, as their principal occupations, are or have been engaged in the practice of maintaining bookkeeping records for the

doctors, surgeons, dentists, nurses, midwives, psychologists and psychiatrists are not included in Section 302, which appears to be a "catch all" provision for professions and occupations not addressed elsewhere in Title 27.

Fees collected from attorneys are not returned to the entity that oversees the practice of law, but are instead divided between the Judicial Council Imprest Account and the General Fund.[215]

██ "If the language [of a statute] is clear and unambiguous, there is no need to resort to any other rule or [to] statutory construction."[216] And, unless the disposition required by the text is absurd, the Court must enforce the statute according to its terms.[217] However, the Court must be ever mindful of statutes and portions of statutes that have since been repealed. Section 302 was added to the Virgin Islands Code on June 6, 1967, and, in 1997, the Third Circuit held that "the Organic Act envisions the possibility of the sharing of power over the regulation of attorneys between the Virgin Islands courts and the Virgin Islands legislature".[218] But, seven (7) years later, the Legislature vested exclusive regulation of the bar in the Supreme Court.[219]

██ The Court finds that Section 302 infringes on judicial power; the Legislature intended to nullify Section 302 with the passage of 4 V.I.C. § 32(e);[220] and these findings are in line with the Legislative intent regarding other self-regulating professions.

## XVI. Selective Enforcement

Plaintiff's Complaint argues that "by common administrative practice, DLCA requires an attorney and/or law office to have a physical address in

---

general public, preparing noncertified financial statements for the general public, and preparing income tax returns for the general public").

[215] 4 V.I.C. § 442(b).

[216] *Shoy v. V.I.*, 55 V.I. 919, 926 (V.I. 2011) (citing *Dodd v. United States*, 545 U.S. 353, 359, 125 S. Ct. 2478, 162 L. Ed. 2d 343 (2005)) (further citation omitted).

[217] *Id.*

[218] *Smith*, 124 F.3d at 466.

[219] 4 V.I.C. § 32(e).

[220] *See, for example, State ex rel. Quelch*, 306 S.E.2d at 235 ("Any legislatively-enacted provision regarding bar admissions that conflicts with or is repugnant to a Supreme Court rule must fall") (and, at 235-236, discussing *Ex parte Auditor of Public Accounts, Ky.*, 609 S.W.2d 682, 684 (1980), which "recognized that any power that had resided in the legislature regarding bar admissions was superseded by . . . Amendment").

the Virgin Islands to be issued a business license" and "[a]s a result, DLCA does not require off-island attorneys to obtain a V.I. business license when they practice in the Territory."[221] Defendant argues that "Plaintiff cannot establish that he was deliberately singled out and discriminated against on account of race, religion, and any other impermissible consideration, that similarly situated attorneys received treatment more favorable than the treatment Plaintiff received, or that any [sloppiness] in the enforcement of the business license fee was intentional or deliberate."[222]

▇ "Selective enforcement" involves "[t]he practice of law-enforcement officers who use wide or even unfettered discretion about when and where to carry out certain laws"[223] and can involve "facially discriminatory conduct or arbitrary decision making"[224] or "singling a person out for prosecution or punishment under a statute . . . because the person is a member of a protected group or because the person has exercised or is planning to exercise a constitutionally protected right."[225] Even if the selective enforcement of a law is simply the result of the difficulty of enforcement, that does not make the selective enforcement appropriate.[226] Indeed, any difficulty the DLCA has in regulating off-island Virgin Islands attorneys supports the conclusion that the Supreme Court is in the better position to regulate attorneys — both on and off-island — because of its relationship with the Virgin Islands Bar Association,[227] even if the Supreme Court's jurisdiction was not exclusive.

---

[221] Complaint, p. 10.

[222] Defendant's Motion to Dismiss, p. 17.

[223] SELECTIVE ENFORCEMENT, BLACK'S LAW DICTIONARY.

[224] *Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183, 200 (2d Cir. 2014).

[225] SELECTIVE ENFORCEMENT, BLACK'S LAW DICTIONARY.

[226] *See, for example, Lexmark Int'l, Inc. v. Ink Technologies Printer Supplies, LLC*, 9 F. Supp. 3d 830, 833-834 (S.D. Ohio 2014) (discussing *Kirtsaeng v. John Wiley & Sons, Inc.*, 133 S.Ct. 1351, 1354, 185 L.Ed.2d 392 (2012) ("[T]he common law's refusal to permit restraints on the alienation of chattels . . . recognized the same principle of freedom to resell can work to the advantage of the consumer and frees the courts from the administrative burden of trying to enforce restrictions upon difficult-to-trace, readily movable goods, and avoids selective enforcement inherent in any such effort").

[227] Members of the bar do not have to have Virgin Islands addresses, and, in fact, such a residency requirement for bar admissions was struck down by the Supreme Court of the

■ Chapter 27 states that *"[e]very* person or association wishing to engage in any business, occupation, profession, or trade"[228] *in the Virgin Islands* is subject to regulation and licensing requirements established by our Legislature. The licensing requirements for attorneys in Chapter 27 do not appear to be restricted to residents of our Territory. If Defendant requires attorneys to reside on-island in order to receive a business license, a license which is, by statute, a prerequisite to the practice of law under Section 301 of Title 27, it appears this too may constitute a constitutional violation. Such a residency requirement has been struck down by the Supreme Court of the United States as unconstitutional under the Privileges and Immunities Clause.[229] The Court finds that the DLCA's process for the licensing of — and subsequent enforcement against — attorneys and firms located on-island involves selectively enforced regulation because Section 301 requires licensure of every person and association wishing to engage in business in the Virgin Islands, regardless of residency.

Therefore, the DLCA must charge the temporary Judicial Council Imprest Account tax to all attorneys engaging in business within the Virgin Islands.

## XVII. Any Conflict Between 27 V.I.C. § 301 *et seq.* and 4 V.I.C. § 32

Defendant argues that "[b]ecause the issuance of the DLCA license does not authorize the practice of law, [DLCA's] termination [of a business license] cannot logically foreclose the practice of law."[230] However, because Defendant's argument conflicts with the clear language of Act No. 5265, Section 272(d)(1), which states that "the Department may issue against such accused party an order to cease and desist," the Court finds that while the DLCA may not initially permit the practice of law, it certainly has the potential to interfere with it. As discussed above, it is a statutory requirement that one first obtain a business license before

---

United States. *Barnard v. Thorstenn*, 489 U.S. 546, 549, 109 S. Ct. 1294, 103 L. Ed. 2d 559 (1989).

[228] 27 V.I.C. § 301(a).

[229] *Barnard*, 489 U.S. 546.

[230] Defendant's Reply, p. 5.

one can practice their profession within the Virgin Islands.[231] Thus, Defendant's contention that "the denial of a DLCA business license is [not] concomitant with a denial of the right to practice law"[232] fails.

## CONCLUSION

A "[declaratory judgment] may be either affirmative or negative in form and effect," with "the force and effect of a final judgment or decree."[233] The Court recognizes that a portion of the fees collected by the DLCA from attorneys is paid into the Judicial Council Imprest Account, an account which covers the necessary expenses of the District and Superior Court libraries and the Virgin Islands Bar Association's Ethics and Grievances and Legal Education and Admission to the Bar committees. And the most important consideration of this Court when considering new or a non-precedential application of the law is the identification of the best rule for the Virgin Islands based on the unique characteristics and needs of [the people] of the Virgin Islands. Therefore, as the public is dependent on access to the law libraries and the regulation of attorneys by the Supreme Court via the Bar Association's Ethics and Grievances Committee, it would not serve the best interest of the people of the Virgin Islands to suddenly deny funding to the Imprest Fund. In the interest of justice, the Court will, as a matter of comity, permit the DLCA to collect from attorneys on behalf of, and forward to, the Judicial Council Imprest Account a $200.00 fee as a temporary tax until the Legislature has enacted a proper tax imposed by an appropriate taxing authority to fund the account or the Supreme Court has chosen to increase or reallocate attorneys' fees and dues to fund the Judicial Council Imprest Account, whichever occurs first.

Because the Court here issues a Declaratory Judgment, Plaintiff's motion for preliminary injunction and Defendant's motion for summary judgment are denied as moot. Defendant's motions to strike are denied.

An appropriate order is issued herewith.

---

[231] Pursuant to 27 V.I.C. § 301, "[e]very person or association wishing to engage in [the profession of a lawyer], as a condition precedent to engaging in any such ... profession, shall apply in writing to and obtain from the Commissioner of Licensing and Consumer Affairs ... a license to engage in or conduct such ... profession".

[232] Defendant's Reply, p. 5.

[233] 5 V.I.C. § 1261.

## ORDER AND DECLARATORY JUDGMENT

Having considered Plaintiff John-Russell B. Pate's October 22, 2014, request for injunctive relief and a declaratory judgment; Defendant Department of Licensing and Consumer Affairs' November 21, 2014, motion to dismiss, treated here as one for summary judgment; and Defendant's March 12, 2015, and March 23, 2015, motions to strike, it is

**ORDERED** that Plaintiff's motion for injunctive relief is **DENIED AS MOOT**; and it is

**ORDERED** that Defendant's motion for summary judgment is **DENIED AS MOOT**; and it is

**ORDERED** that Defendant's motions to strike are **DENIED**; and it is

**ORDERED** that Defendant **SHALL IMMEDIATELY CEASE** issuing, revoking or suspending attorney business licenses; and it is

**ORDERED** that Defendant **SHALL IMMEDIATELY CEASE** requesting or threatening to request cease and desist orders involving attorney business licenses; and it is

**ORDERED** that in the interest of justice, the Court will, as a matter of comity, permit the DLCA to collect from attorneys on behalf of, and forward to, the Judicial Council Imprest Account a $200.00 annual fee as a temporary tax until the Legislature has enacted a proper tax imposed by an appropriate taxing authority to fund the account or the Supreme Court has chosen to increase or reallocate attorneys' fees and dues to fund the Judicial Council Imprest Account, whichever occurs first; and it is

**ORDERED** that the $200.00 annual temporary tax **SHALL NOT** be collected from attorneys who have already submitted attorney licensing fees for the year 2015 to the DLCA as of **April 17, 2015**; and it is

**ORDERED** that attorneys who fail to pay the $200.00 annual temporary tax **SHALL** be referred by the DLCA to the Virgin Islands Bar Association for disciplinary action, if appropriate; and it is

**ORDERED** that the file can be closed by the Clerk of Court; and it is

**ORDERED** that copies of this Order shall be directed to counsel of record and to the IT Division of the Superior Court of the Virgin Islands, St. Thomas/St. John Division.